# GREAT NORTHERN RAILWAY COMPANY v. UNITED STATES.

## ON WRIT OF CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

### No. 491. Argued January 7, 1908.—Decided February 24, 1908.

The provisions of § 13, Rev. Stat., that the repeal of any statute shall not have the effect to release or extinguish any penalty incurred under the statute repealed, are to be treated as if incorporated in, and as a part of, subsequent enactments of Congress, and, under the general principle of construction requiring effect to be given to all parts of a law, that section must be enforced as forming part of such subsequent enactments except in those instances where, either by express declaration or necessary implication such enforcement would nullify the legislative intent.

The act of Congress of June 29, 1906, c. 359, 34 Stat. 584, known as the Hepburn law, as construed in the light of § 13, Rev. Stat., as it must be construed, did not repeal the act of February 19, 1903, c. 708, 32 Stat. 847, known as the Elkins law, so as to deprive the Government of the right to prosecute for violations of the Elkins law committed prior to the enactment of the Hepburn law; nor when so construed does the Hepburn law under the doctrine of *inclusio unius exclusio alterius* exclude the right of the Government to prosecute for past offenses not then pending in the courts because pending causes are enumerated in, and saved by, § 10 of the Hepburn law.

In citing approvingly, as to the particular point involved in this case, cases recently decided in the lower Federal courts, this court expresses no opinion upon any other subjects involved in such cases, and does not even indirectly leave room for any implication that any opinion has been expressed as to such other issues which may hereafter come before it for decision.

Although a ground for demurrer to indictment may be sufficiently broad to embrace a contention raised before this court, if it appears that such contention was disclaimed, and was not urged, in the trial court and in the Circuit Court of Appeals, and was not referred to in any of the opinions below or in the petition for certiorari or the brief in support thereof, this court, will, without intimating any opinion in regard to its merits, decline to consider it.

155 Fed. Rep. 945, affirmed.

THE facts are stated in the opinion.

*Mr. William R. Begg* for petitioner:

(1) The indictment herein does not charge an offense under

§ 1 of the act of February 19, 1903 (the Elkins law), because it fails to allege that the concessions from tariff were either willfully or knowingly granted.

The indictment charges petitioner and the individual defendants jointly, with one and the same offense. The individual defendants could be guilty only of the offense defined in the third sentence of § 1.

The indictment charges only that petitioner and the other defendants unlawfully granted the concessions. Concessions from tariff granted under mistake are unlawful. *Railway Co.* v. *Mugg,* 202 U. S. 242; *Railway Co.* v. *Hefley,* 158 U. S. 98; *Railway Co.* v. *Harrison,* 119 Alabama, 539; *S. C.,* 24 So. Rep. 552.

The last half of the second sentence of § 1 makes any concession, however made, unlawful. Criminal intent must be necessary to convert this unlawful act into a crime. The concession, to be a crime, must be either knowingly or willfully granted. If a criminal intent is necessary to the crime, it must be charged in the indictment. *United States* v. *Carll,* 105 U. S. 611, 612; *Evans* v. *United States,* 153 U. S. 584, 587; *Armour Packing Co.* v. *United States,* 153 Fed. Rep. 1, 23, 24.

It is only by virtue of the Elkins law that the corporation may be guilty of the crime. *Commission* v. *Railway Co.,* 145 U. S. 263, 281; *United States* v. *Hanley,* 71 Fed. Rep. 672, 674, 676.

(2) That part of § 1 of the Elkins law, which defined the crimes charged in the indictment and prescribed punishment therefor, had been before the indictment was returned, repealed by § 2 of the act of June 29, 1906, commonly known as the Hepburn act.

The prosecution claims that under the Elkins law it was not necessary that to be a crime the concession from tariff be knowingly granted, and the indictment here involved does not charge a concession knowingly granted. Under the amendment made by the Hepburn act the departure, to be criminal, must be knowingly made, and the indictment must so allege. The element of scienter is injected.

The punishment is changed. Under the Elkins law the only

punishment prescribed was a fine. Under the amendment the punishment is a fine and also imprisonment for not to exceed two years, of other than corporate offenders.

Such radical changes in the ingredients of the crime and in the punishment therefor necessarily under the decisions of this and other courts, work the repeal of the part of the Elkins law above quoted. *Norris* v. *Crocker*, 13 How. 429, 439; *United States* v. *Tynen*, 11 Wall. 88, 92; *United States* v. *Claflin*, 97 U. S. 546, 550, 552; *United States* v. *Fisher*, 109 U. S. 143, 145; *Bank* v. *United States*, 107 U. S. 445; *District of Col.* v. *Hutton*, 143 U. S. 18, 26; *People* v. *Tisdale*, 57 California, 104, 106; *Telegraph Co.* v. *Brown*, 8 N. E. Rep. 171, 172; *Lindsey* v. *State*, 5 So. Rep. 99, 100; *State* v. *Allen*, 44 Pac. Rep. 121, 122; *State* v. *Ingersoll*, 17 Wisconsin, 651, 655; *Mullen* v. *People*, 31 Illinois, 444, 445; *Mongeon* v. *People*, 55 N. Y. 613, 615; *State* v. *Massey* (N. C.), 4 L. R. A. 308, 311; *Wharton* v. *State*, 5 Coldw. 1; *S. C.*, 94 Am. Dec. 214; *State* v. *Smith*, 62 Minnesota, 540; 2 Lewis' Sutherland Stat. Constr. 482.

The rule that the repeal and simultaneous reënactment, literally or substantially, of a statute, continues it, has no application to the case at bar. This court, as well as others, has rejected the rule where the reënactment is a complete revision of and substitute for the earlier statute. *Murdock* v. *Memphis*, 20 Wall. 590, 616; *Pana* v. *Bowler*, 107 U. S. 529, 538; *Murphy* v. *Utter*, 186 U. S. 95, 104, 105; *Tracy* v. *Tuffly*, 134 U. S. 206, 223; *Bank* v. *United States*, 107 U. S. 445; *Red Rock* v. *Henry*, 106 U. S. 596; *The Paquete Habana*, 175 U. S. 677, 685; *State* v. *King*, 12 La. Ann. 593, 594; *Coffin* v. *Rich*, 45 Maine, 507, 512, 513; *Goodno* v. *Oshkosh*, 31 Wisconsin, 127, 129; *Wilson* v. *Railway Co.*, 29 Pac. Rep. 869.

The rule cannot apply to the case at bar because there is no substantial reënactment of the earlier law.

The Circuit Court of Appeals applied the rule on the authority of *Steamship Co.* v. *Joliffe*, 2 Wall. 450, 458; *Irrigation Co.* v. *Garland*, 164 U. S. 1; *Campbell* v. *California*, 200 U. S. 87; *Lamb* v. *Powder Co.*, 65 C. C. A. 570; *Wright* v. *Oakley*, 5 Metc.

(Mass.) 400; *Association* v. *Benshimol*, 130 Massachusetts, 325; *St. Louis* v. *Alexander*, 23 Missouri, 483; *Ely* v. *Holton*, 15 N. Y. 595; *Anding* v. *Levy*, 57 Mississippi, 51; *Fullerton* v. *Spring*, 3 Wisconsin, 588; *Glentz* v. *State*, 38 Wisconsin, 549; *Burwell* v. *Tullis*, 12 Minnesota, 572; *Gaston* v. *Merriam*, 33 Minnesota, 271; *State* v. *Baldwin*, 45 Connecticut, 134; *People* v. *Board*, 20 Colorado, 220; *Moore* v. *Kenockee*, 75 Michigan, 332; *Capron* v. *Strout*, 11 Nevada, 304; *McMullen* v. *Guest*, 6 Texas, 275; *Holden* v. *State*, 137 U. S. 483; *Commonwealth* v. *Herrick*, 6 Cush. 465; *State* v. *Gumber*, 37 Wisconsin, 298; *State* v. *Wish*, 15 Nebraska, 448; *State* v. *Miller*, 58 Indiana, 399; *Sage* v. *State*, 127 Indiana, 15; *State* v. *Kates*, 149 Indiana, 46; *State* v. *Herzog*, 25 Minnesota, 490; *State* v. *Prouty*, 115 Iowa, 657; *State* v. *Williams*, 117 N. Car. 753; *State* v. *Brewer*, 22 La. Ann. 273; *Territory* v. *Ruval*, 84 Pac. Rep. (Ariz.) 1096; *Junction City* v. *Webb*, 44 Kansas, 71.

Of the cases cited the first eighteen in the list involved private rights, and the remaining thirteen liability to punishments under statutes claimed to have been repealed. All the cases, except *St. Louis* v. *Alexander; Moore* v. *Kenockee; Capron* v. *Strout*, and *McMullen* v. *Guest*, support the abstract rule. It seems to us that none of them support the court's application of it.

The part of the Elkins law, applicable to this case, necessarily ceased to exist at the instant the Hepburn act took effect, because two repugnant laws covering the same subject matter cannot coexist; and also because that part of the Elkins law was omitted from the reënactment and a new and different provision substituted.

The repeal of the part of the Elkins law quoted was complete.

The Elkins law was repealed at least as to all concessions from tariff granted or received, whether knowingly or not, by others than corporations. The act or crime of the officer or agent alone constitutes an act or crime of the corporation. To hold that the Elkins law remains in force only as to the corporation is to penalize it, and through it innocent stock-

holders, while permitting the guilty officer to escape. Congress cannot have intended this.

The repeal cannot be severed. The part of the Hepburn act quoted in connection with § 10, repealed *in toto* the part of the Elkins law quoted. *Goodno* v. *Oshkosh*, 31 Wisconsin, 127, 130.

Congress, by § 10, of the Hepburn act, has manifested its intent that only penalties and forfeitures incurred under the repealed parts of the Elkins law for which prosecutions were pending at the date of the passage of the Hepburn act should be saved, and that penalties and forfeitures for which prosecutions had not at that date been instituted should be remitted.

By § 13, Rev. Stat., in the absence of a special saving clause in the repealing act all penalties previously incurred under the act repealed are saved. *United States* v. *Reisinger*, 128 U. S. 398; *Lang* v. *United States*, 133 Fed. Rep. 204; *People* v. *England*, 91 Hun, 152; *State* v. *Smith*, 62 Minnesota, 540, 543; *Kleckner* v. *Turk*, 63 N. W. Rep. 469.

In the absence of a statute to the contrary, where the repealing act saves rights accrued and penalties incurred under the previous law and at the same time modifies the procedure by which the right is to be enforced or the penalty recovered, the procedure in an action or prosecution to enforce the right or recover the penalty must be in accordance with the later act. *Railway Co.* v. *Grant*, 98 U. S. 398; *Railroad Co.* v. *Oglesby*, 76 N. E. Rep. 165, 166; *Taylor* v. *Strayer*, 78 N. E. Rep. 236, 238; *Palmer* v. *City of Danville*, 46 N. E. Rep. 629; *Holcomb* v. *Boynton*, 37 N. E. Rep. 1031.

Section 10 can have no effect other than to save penalties, forfeitures and liabilities incurred under the repealed laws, because a statute affecting substantial rights is usually construed to have only a prospective operation.

The word "causes" as used in the section includes criminal cases. *Blyew* v. *United States*, 13 Wall. 581, 591; *Erwin* v. *United States*, 37 Fed. Rep. 471, 479; *Taylor* v. *United States*, 45 Fed. Rep. 531, 539; *State* v. *Hancock* (N. J.), 24 Atl. Rep. 726, 728.

Section 13 is ineffectual to prevent the courts from giving effect by their decrees to the intent of a subsequent Congress, as that intent may be discovered from the subsequent enactment.

The judiciary is an independent department. To construe the law is of the essence of its duty. Cases cited *supra* and *Ableman* v. *Booth,* 21 How. 506, 520; *Gordon* v. *United States,* 117 U. S. 697; *United States* v. *Klein,* 13 Wall. 128, 147; *Marbury* v. *Madison,* 1 Cranch, 137, 176; *District of Columbia* v. *Hutton,* 143 U. S. 18, 27; *United States* v. *Claflin,* 97 U. S. 546, 548; *Powell* v. *Pennsylvania,* 127 U. S. 678, 697.

*The Attorney General* and *Mr. Milton D. Purdy,* Assistant to the Attorney General, for respondent:

The concluding portion of § 10 of the Hepburn act was intended by Congress to preserve existing methods of procedure with respect to causes pending in courts of the United States at the time of the passage of the act, and it should not be construed as extinguishing penalties, forfeitures and liabilities which had accrued under the old law but were not then before the courts for judicial determination.

Section 10 of the Hepburn act must be read in connection with § 13 of the Revised Statutes, which is "a law prescribing rules for the construction of acts and resolutions of Congress." *United States* v. *Reisinger,* 128 U. S. 398; *United States* v. *Barr,* 4 Sawyer, 254; *United States* v. *Ulrici,* 3 Dillon, 532; *United States* v. *Four Cases of Lastings,* 10 Benedict, 371; *Sims* v. *United States,* 121 Fed. Rep. 515. Combining the two the result would be as follows: "That all laws and parts of laws in conflict with the provisions of this act are hereby repealed, but this repeal shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under said laws, and such laws shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability, but the amendments herein provided for shall not affect causes now pending in courts of the United States, but such causes shall

be prosecuted to a conclusion in the manner heretofore pro-
vided by law."

The only implication to be drawn from the language em-
ployed is that all causes then pending before the Interstate
Commerce Commission, together with all rights of action not
then initiated under the old law, shall be proceeded with in
accordance with the modified procedure provided for by the
new law. This is shown by the history of the enactment, of
the causes which led to its adoption and a consideration of
the law itself in its entirety.

The debates in Congress while this law was under considera-
tion were perhaps the most notable in recent years, especially
in the Senate, and it is worthy of note that at no time was the
idea expressed or even suggested that penalties, forfeitures
and liabilities which had accrued under the old law, but which
were not pending before the courts for determination, should
be extinguished. Neither was it intimated that the old law
forbidding rebating was considered or thought to be harsh or
unjust in any particular. On the contrary, the one dominat-
ing idea seems to have been that the old law should be strength-
ened, and that at least, with respect to individuals offending
against that law, the court should be empowered to punish
by imprisonment in addition to the imposition of a fine.

In fact, there is abundant reason for claiming that the Con-
gress considered the old law as not sufficiently "drastic" to
put a stop to those practices which apparently had been going
on in utter defiance of the Elkins act.

To sustain the petitioners' contention the doctrine of re-
peal by implication must be invoked and applied. The rule
of law that repeals by implication are not favored is so well
recognized by the courts as to render a citation of authorities
unnecessary. If, therefore, it is possible to construe the lan-
guage employed in § 10 of the Hepburn law in such a manner
as to avoid the implication that § 13, Rev. Stat., has been re-
pealed in so far as it would operate to save penalties, for-
feitures, and liabilities which had accrued at the time this law

was passed, it would certainly be the duty of the courts to adopt such a construction.

MR. JUSTICE WHITE delivered the opinion of the court.

The act of Congress, commonly referred to as the Hepburn law, was enacted June 29, 1906. 34 Stat., chap. 3591, p. 584. In November, 1906, in a District Court of the United States for Minnesota, the Great Northern Railway Company and several of its officials were indicted for violations of the act of February 19, 1903, commonly known as the Elkins act. 32 Stat., chap. 708, p. 847. There were fifteen counts, all relating to acts done in May, June, July and August, 1905. Except as to varying dates of shipment and the sum of the concessions, the counts were alike. A reference to the first count will therefore make clear all the charges which the indictment embraced: After alleging the corporate existence of the railway company, the capacity of its named officials and agents and the fixing and publishing of rates, there was set out the carriage of certain grain by the railway company from Mir neapolis, Minnesota, to Seattle, Washington, for account of the W. P. Devereux Company, a corporation. It was then alleged that by the tariff and schedule of rates as established, published and filed in conformity to the act to regulate commerce the legal charge was fifty cents for each one hundred pounds of grain carried from Minneapolis to Seattle, "but the grand jurors aforesaid, on their oath aforesaid, do present and charge that . . . within the jurisdiction of this court, . . . the said Great Northern Railway" (and the officers and agents named) "did unlawfully grant and give to the said W. P. Devereux Company . . . a concession of twenty cents (20c.) of the said rate as aforesaid upon every one hundred pounds of the property so transported . . . as aforesaid, whereby the said property was by said corporation common carrier transported in said interstate commerce . . . at a less compensation and rate than that named therefor in said tariff and schedules so as aforesaid

published and filed by the said common carrier and in force at the time upon its said route."

The indictment was demurred to by all the accused upon the following grounds:

"1. That neither the said indictment nor any count in the said indictment stated sufficient facts or grounds to constitute against the said defendants, or either of them, an offense against the laws of the United States, nor any offense.

"2. That the statute of the United States creating the offense or offenses pretended to be charged in the said indictment, and under which said indictment was found, was duly repealed and was not in force at the time when the said indictment was found."

The demurrer in this case was evidently heard along with demurrers in cases against others presumed to present like questions. The demurrer was overruled for reasons stated in an opinion, deemed controlling not only of this but also of the other cases. *Sub nomine United States* v. *Chicago; St. P., M. & O. Ry. Co.*, 151 Fed. Rep. 84. By consent there was a severance between the railway company and the individual defendants. On the trial, after the jury had been sworn and when the taking of testimony was about to begin, the bill of exceptions states that the counsel for the company declared that he desired, on behalf of the defendant, "in order to save our rights under the law questions involved, to make objection to the introduction of any evidence. And I desire to have it understood and agreed between the Government and the defendant that I may now enter this objection with the same force and effect as if a witness had been already called and sworn to testify on behalf of the Government." On this being assented to by the Government, objection was made to the introduction of any evidence based upon the two grounds which had been previously urged to support the demurrer. The following occurred:

"The COURT: I understand that last ground. Let us see the first ground.

"Mr. Brown: The first ground is the general ground of the insufficiency of the indictment. The second is the same thing, only more specific.

"I think the objection will be sufficient if confined to the first one.

"The Court: The point that you wish to make is that there can be no prosecution here, no matter what the evidence is, because of the repeal of this Elkins act by the Hepburn act.

"Mr. Brown: That is right.

"The Court: The objection will be overruled.

"Mr. Brown: I would ask an exception to the ruling of the court.

"The Court: An exception is allowed."

Thereupon the counsel for the company stated that there was an agreement with the Government that the company should make an admission as to the facts alleged in the indictment, subject to the right of the company to make "such objections and motions and to take such action, either in this court or upon appeal, as shall be deemed necessary and proper to have determined the question of the sufficiency of the indictment to state an offense, and the sufficiency of the facts admitted to state an offense; and it is further agreed that neither such admissions, nor the fact that they had been made in this trial, shall be used as evidence or otherwise upon any other trial of this case, or upon the trial of any case." To this the prosecution assented. The establishment and publication of the tariff rates, the shipments of grain as alleged in the indictment, etc., were then admitted by the accused, and it was further admitted as follows:.

"That in case of the several shipments specified in the several counts of the indictment herein the concessions stated in the several counts respectively in the said indictment were given to W. P. Devereux Company by the direction and with the consent of the said defendant, the Great Northern Railroad Company."

Both parties then rested. The company requested an in-

struction in its favor, based on the grounds upon which it had demurred, for which it had objected to any evidence, and upon the additional ground "that the facts shown by the evidence are not sufficient to constitute against the defendant any offense against the laws of the United States, nor any offense." Upon this request the following colloquy between the court and the counsel occurred:

"The Court: You admit all the material facts alleged in the indictment?

"Mr. Brown: We do.

"The Court: And practically admit that they are proved?

"Mr. Brown: We can't say that. We admit the facts that are stated here—the Government has gone over—and I understand they are the facts of the indictment.

"The Court: For the purposes of this case, we will say that you admit those facts.

"The motion will be denied, and an exception allowed the defendant."

The court then instructed the jury, as follows:

"The defendant has admitted by its counsel that all the material allegations of the several counts are true, and if you do not believe these allegations are proven you are obliged to find the defendant not guilty. I suppose it is proper for the court to say that it can hardly see how you can find any other verdict than that of guilty, but that is for you to say. If you do not believe these allegations are proven you can find the defendant not guilty."

An exception was allowed the defendant to that part of the charge instructing that if the facts stated in the indictment were believed to be true, that the defendant should be found guilty. The following then occurred:

"The Court: That is equivalent to saying that the indictment itself is insufficient.

"Mr. Brown: Might I have that exception?

"The Court: You may.

"Mr. Brown: May I have it appear on the record that the

grounds of my exception are the same three grounds named as the basis of my motion to instruct a verdict, to wit:

"1. That neither the indictment, on which this prosecution is based, nor any count in the said indictment, states sufficient facts or grounds to constitute against the defendant an offense against the laws of the United States, nor any offense;

"2. That the statute, or statutes, of the United States creating the offense or offenses, pretended to be charged in the indictment, and in each count thereof, and upon which statutes the said indictment and each count thereof is based, had been duly repealed and were not in force, as to any of the offenses in the said indictment pretended to be charged, at the time when the said indictment was found;

"3. On the ground that the facts shown by the evidence are not sufficient to constitute against the defendant an offense against the laws of the United States, nor any offense.

"The COURT: You may."

There was a verdict of guilty, and the grounds upon which the exceptions previously taken had been rested were made the basis for a motion in arrest, which was overruled and excepted to. From the verdict and sentence thereon the case was taken to the Circuit Court of Appeals for the Eighth Circuit, where the judgment was affirmed (155 Fed. Rep. 945), and the case is here because of the allowance of a writ of certiorari.

There is a contention in the brief of counsel for the petitioner, that the demurrer to the indictment should have been sustained and that the motion to arrest as well as the exceptions to the charge should have prevailed, because the indictment in all its counts was insufficient to state an offense under the Elkins act, even if that act had not been repealed or modified by the Hepburn law.

We postpone presently determining whether this contention is open on the record, or, if open, is meritorious, in order to come at once to the important question for decision, which is:

1. Did the Hepburn law repeal the Elkins act so as to deprive the Government of the right to prosecute for violations of the Elkins act committed before the Hepburn law was passed? The conflicting contentions on these subjects are these: It is insisted on behalf of the railway company that the Elkins act was amended and reënacted by § 2 of the Hepburn law, and that thereby a repeal of the Elkins act was accomplished, and that the express terms of the Hepburn law manifest the intention of Congress that no offense theretofore committed against the Elkins act should be prosecuted, unless a prosecution was then pending. The Government whilst not challenging the doctrine that where a criminal statute is repealed and a right to prosecute for a prior offense is not saved, such right is extinguished, yet insists that the principle has no application to this case, because the reënactment of the Elkins act by § 2 of the Hepburn law did not amount to a repeal of the Elkins act to the extent of preventing prosecutions for offenses against that act committed prior to the adoption of the Hepburn law. And it is urged that this result is demonstrated not only by the clause of the Hepburn law reënacting the Elkins act, but also by other provisions of the Hepburn law interpreted in the light of the principles of construction which are made applicable by operation of the general law, that is, Rev. Stat. § 13.

In considering these contentions in their ultimate aspect it is clear that to dispose of them requires us, in any event, to interpret the Hepburn law and to determine how far the reënactment by that law of the provisions of the Elkins act operates to prevent prosecutions for offenses committed prior to the date when the Hepburn law was enacted. We come therefore at once to that question. In doing so, to disembarrass the analysis from what may be an irrelevant and certainly a confusing consideration, we concede for the sake of argument only that the effect of the amendment and reënactment of the Elkins act by § 2 of the Hepburn law was to repeal the Elkins act, and in the light of this concession we

propose to determine whether the right to prosecute for any prior offense committed before the going into effect of the Hepburn law was lost by reason of the adoption of that law.

We must read the Hepburn law in the light of § 13 of the Revised Statutes, which provides as follows:

"SEC. 13. The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

This provision but embodies § 4 of the act approved February 25, 1871, c. 71, 16 Stat. 431, which was entitled "An Act prescribing the Form of the enacting and resolving Clauses of Acts and Resolutions of Congress, and rules for the construction thereof." As the section of the Revised Statutes in question has only the force of a statute, its provisions cannot justify a disregard of the will of Congress as manifested either expressly or by necessary implication in a subsequent enactment. But while this is true the provisions of § 13 are to be treated as if incorporated in and as a part of subsequent enactments, and therefore under the general principles of construction requiring, if possible, that effect be given to all the parts of a law the section must be enforced unless either by express declaration or necessary implication, arising from the terms of the law, as a whole, it results that the legislative mind will be set at naught by giving effect to the provisions of § 13. For the sake of brevity we do not stop to refer to the many cases from state courts of last resort dealing with the operation of general state statutes like unto § 13, Rev. Stat., because we think the views just stated are obvious and their correctness is established by a prior decision of this court concerning that section. *United States* v. *Reisinger*, 128 U. S. 398.

The Hepburn law is entitled "An Act to amend an Act entitled 'An Act to regulate commerce,' approved Febru-

ary fourth, eighteen hundred and eighty-seven, and all Acts amendatory thereof and to enlarge the powers of the Interstate Commerce Commission." The law is comprehensive. It undoubtedly, as we have said, in the second section, amends and reënacts the Elkins act and enlarges in important particulars the powers of the Interstate Commerce Commission, and changes the procedure in various ways essential to the conduct of controversies before the commission. Besides, the act in some respects modifies the means of enforcing the orders of the commission in the courts of the United States, the right of appeal, the judgment as to costs, attorneys' fees, etc. The crucial portion of the act, for the purposes of the present inquiry, is § 10, which provides: "That all laws and parts of laws in conflict with the provisions of this act are hereby repealed, but the amendments herein provided for shall not affect causes now pending in the courts of the United States, but such causes shall be prosecuted to a conclusion in the manner heretofore provided by law."

Clearly, the mere repeal of conflicting laws is in no way repugnant to the provisions of § 13 of the Revised Statutes, and, therefore, standing alone, leaves no room for contending that the enactment of the Hepburn law destroyed the effect of § 13. The difficulty of construction, if any, arises from the words following the general repealing clause: "but the amendments herein provided for shall not affect causes now pending in the courts of the United States, but such causes shall be prosecuted to conclusion in the manner heretofore provided by law." These words, we think, do not, expressly or by fair implication, conflict with the general rule established by § 13, Rev. Stat., since by their very terms they are concerned with the application to proceedings pending in the courts of the United States of the new methods of procedure created by the Hepburn law. Any other construction would necessitate expunging the words "shall be prosecuted to a conclusion in the manner heretofore provided by law." This follows, because if it were to be held that the intent and object of the

lawmaker in dealing with cases "pending in the courts of the United States," was solely to depart as to all but such pending cases from the general rule of Rev. Stat. § 13, then the provision as to future proceedings would be unnecessary, because the old and unrepealed as well as the newly enacted remedies would be applicable, as far as pertinent, to such pending causes. The provision commanding that the new remedies should not be applicable to causes then pending in the courts of the United States gives significance to the whole clause and serves to make clear the fact that the legislative mind was concerned with the confusion and uncertainty which might be begotten from applying the new remedies to causes then pending in the courts, and demonstrates therefore that this subject, and this subject alone, was the matter with which the provision in question was intended to deal. In other words, when the object contemplated by the provision is accurately fixed the subject is freed from difficulty, and not only the letter but the spirit of the provision becomes clear; that is to say, it but manifests the purpose of Congress to leave cases pending in the courts to be prosecuted under the prior remedies, thus causing the new remedies created to be applicable to all controversies not at the time of the passage of the act pending in the courts. And all the arguments relied upon to sustain the theory that the power to prosecute for past offenses not then pending in the courts was abrogated by the Hepburn law rest in substance upon the disregard of the true significance of the provision of § 10. Thus the argument that by the application of the elementary rule by which the inclusion of one must be considered as the exclusion of the other, it follows that the power to further prosecute all but cases then pending in the courts was destroyed by the Hepburn law, because pending causes are enumerated in § 10, and are hence not saved by Rev. Stat. § 13, simply assumes that the provision of § 10 was intended to save the right to further prosecute the cases then pending in the courts, and disregards the fact that the provision as to pending causes was solely addressed to the remedies to

be applied in the future carrying on of such cases. Again, the contention that unless the provision as to pending causes in § 10 be construed as relating to the further right to prosecute such cases, it becomes meaningless, but overlooks the fact that the purpose of the provision was, by express enactment, to prevent the application of the new remedies to the causes then pending in the courts of the United States, a result which would not necessarily have followed without the direction in question.

The purpose of Congress in enacting § 10 is aptly illustrated by previous legislation concerning the reënactment of the Interstate Commerce Law, and may well have been deemed to be advisable in consequence of the decision of this court in *Missouri Pacific Railway* v. *United States*, 189 U. S. 274. The construction which we have given § 10, resulting from its plain language, is fortified by a consideration of the context of the Hepburn law. Thus conceding for the sake of argument that the word " pending cases," as used in § 10, embraces criminal prosecutions, it clearly also relates to civil controversies. Now, § 16 of the prior act to regulate commerce, as amended and reënacted by § 5 of the Hepburn law, prescribes a limitation of two years "from the time the cause of action accrues" as to "all complaints for the recovery of damages" before the commission, and establishes a limitation of one year for the filing of a petition in the Circuit Court for the enforcement of an order of the commission for the payment of money. But the section contains a proviso saving the right to present claims accrued prior to the passage of the act, provided the petition be filed within one year. If it were true that § 10 abrogated, as asserted, the right to prosecute all claims not pending in the courts at the time of the passage of the Hepburn law, it would follow that that law destroyed the very rights which it specifically provides should be saved if prosecuted within a year. Moreover, as the clause of § 10 which is relied upon in terms embraces only cases pending in the courts of the United States, it would follow, if the contention here made were true, that the

Hepburn law, while saving pending cases in the courts, yet destroyed all claims pending at the time of the passage of that act before the commission. As no reason is suggested why, if the purpose of § 10 was to save pending causes, that section should have destroyed the right to further prosecute all causes pending before the commission, it would seem that the inclusion in § 10, only of causes pending in courts of the United States, could only have been the result of a purpose on the part of Congress not to distinguish without reason between pending. causes by saving one class and destroying the other, but was solely based on the desire of Congress not 'to interfere with proceedings then pending in the courts, but to leave such proceedings to be carried to a finality, in accordance with the remedies existing at the time of their initiation. There are various other provisions of the Hepburn law which we think additionally irresistibly demonstrate the correctness of the construction which we affix to § 10, but we do not, for the sake of brevity, refer to them, as we think the reasoning hitherto stated adequately shows the unsoundness of the proposition that that section manifests in any respect the intention of Congress to depart from the general principle expressed in Rev. Stat. § 13. We say, however, that the view we have taken has in various forms of statement been upheld by a line of decisions in the lower Federal courts. *United States* v. *Standard Oil Company,* 148 Fed. Rep. 719; *United States* v. *Chicago, St. P., M. & O. Railway Company et al.,* 151 Fed. Rep. 84; *United States* v. *Delaware, Lackawanna. & Western Railway Company,* 152 Fed. Rep. 269; *United States* v. *New York Central & Hudson River Railroad Company,* 153 Fed. Rep. 630. In citing the cases in question we do not wish to be considered as implying that we express any opinion as to the doctrines which they may announce upon other subjects than the one now before us. We say this, because it may be that some of the other subjects with which some of the cited cases deal may hereafter come before us for decision, and therefore we prefer not prematurely, even by indirection, to leave room

for the slightest implication that we express an opinion as to such other issues.

2. This brings us to the contention which we at the outset passed over, which is that the indictment was insufficient to state an offense under the Elkins act, although that act was not repealed. The proposition is, that as the indictment only charged that the concessions on the established rate were unlawfully given, it was insufficient because in order to cause a concession to be a crime under the Elkins act, as it stood before the Hepburn law, such concession must have been "either knowingly or willfully granted. If a criminal intent is necessary to the crime, it must be charged in the indictment." It is undoubted that the first ground of the demurrer filed to the indictment was broad enough to embrace this contention if it had been urged. That it was not urged on the hearing of the demurrer persuasively results from the fact that it was not noticed in the elaborate opinion filed by the court in disposing of the demurrer. It moreover results from the proceedings had at the trial after the jury was sworn. The judge who presided at that trial was the same judge before whom the demurrer was heard. When in stating the objection to the admissibility of any evidence on the part of the Government, the counsel for the accused restated both grounds, a expressed in the demurrer, the only contention which the court understood to be urged was the repeal of the Elkins act, since the court said: "I understand that last ground " (the one referring to the repeal of the Elkins act). "Let us see the first ground." It is clear that the counsel did not then consider that the first ground embraced the proposition now made, since in answer to the question of the court he said: "The first ground is the general ground of the insufficiency of the indictment. The second is the same thing, only more specific." That the court understood this declaration as indicating that the only question raised was the repeal of the Elkins act, beyond controversy appears from the statement then made by the court: "The point you wish to make is that there can be no prosecution

here, no matter what the evidence is, because of the repeal of the Elkins act by the Hepburn act." To. which counsel, answered: "That is right." True also is it that the general language of the exceptions subsequently taken are also broad enough to embrace the point now made, but consistently with that candor and directness of conduct which we should attribute to counsel, and which we do attribute, we cannot consider that the subsequent exceptions were intended by counsel, without notice to the court, to embrace a contention which had been expressly disclaimed and which could not be in the case consistently with the previous statement of counsel as to the one and sole point which they desired to raise. And this conclusion is moreover rendered necessary by the nature of the admission made, which expressly conceded that "the concessions stated in the several counts respectively in the said indictment were given . . . by the direction and with the consent of the said defendant, the Great Northern Railway Company." And particularly is this so in view of the express declaration made by counsel to the court after his admission as to the facts of the case, viz.: "I understand that they [the admissions] are the facts of the indictment." In addition to this not a syllable in the elaborate opinion of the Circuit Court of Appeals refers to the question now urged. On the contrary, that opinion contains affirmative statements by the court concerning concessions made by counsel for both parties in argument which exclude the possibility that the contention we are considering was ever directly urged or even indirectly called to the attention of that court. Finally, in the petition filed for certiorari, counsel, after stating the bringing of the indictment, the demurrer, the admissions and the exceptions made at the trial, summed up and precisely stated all the contentions which arose from the demurrer and the exceptions without a single reference to the point now relied upon, and that point was not referred to or noticed in the brief submitted in support of the petition for certiorari. Certain is it that the proposition now urged, in view of the admission made below, is of a purely

technical character. Because we decline to consider the contention under the circumstances stated, we must not be understood as intimating any opinion whatever upon it. Into that question we have not deemed that we are called upon to enter.

*Affirmed.*