NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0075n.06

No. 10-3916

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jan 23, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| Plaintiff-Appellee, | ) ) | COURT FOR THE NORTHERN DISTRICT OF |
| v. | ) ) | OHIO |
| ROBERT L. TURNER, | ) ) ) |  |
| Defendant-Appellant. | ) ) ) |  |

Before: COOK, WHITE, and DONALD, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Appellant Robert Turner pleaded guilty to two counts of distributing five or more grams of crack-cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and one count of distributing fifty or more grams of crack-cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). He was sentenced to the statutory mandatory minimum term of 240 months' imprisonment. Turner appeals his sentence, arguing that the sentencing court wrongly relied on void prior convictions and that the United States Constitution requires that he be re-sentenced under the Fair Sentencing Act of 2010 and recent amendments to the United States Sentencing Guidelines. We AFFIRM.

## I.

Turner was indicted on July 1, 2009 for violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(B), and 18 U.S.C. § 2. On August 29, 2009, the government filed an Information pursuant to 21 U.S.C. § 851 to establish Turner's prior drug-trafficking conviction in support of enhanced penalties for the charged offenses. Turner pleaded guilty to three counts on September 4, 2009, pursuant to a written plea agreement. The plea agreement acknowledged that due to Turner's previous felony drug conviction, the statutory mandatory minimum sentence for Count 4 would be 240 months of imprisonment, and discussed the possibility that Turner would be classified as a career offender based on two additional state-court convictions.

After Turner entered his plea and before his sentencing hearing, the Ohio Supreme Court reaffirmed its earlier pronouncements that Ohio sentences that failed to impose a statutorily mandated period of post-release control were contrary to law and void. *State v Singleton*, 920 N.E.2d 958 (Ohio 2009). Turner argued that the three prior state-court convictions used to support the enhanced penalties outlined in his plea agreement—a 1996 conviction for aggravated burglary, a 2000 conviction for possession of crack-cocaine, and a 2000 conviction for drug trafficking—were void under Ohio law because the sentencing courts failed to impose terms of post-release supervision. Turner also sought relief in state court petitions to have his previous convictions declared void; this relief was denied in three separate opinions. Turner's appeals are still pending.

On July 22, 2010, the district court rejected Turner's argument that his state-court convictions could not be used to support enhanced penalties. After factoring in Turner's status as a career offender, an adjustment for Turner's role in the offense, and a reduction for acceptance of

responsibility, the court determined that Turner had an offense level of 34 and a criminal history category of VI, and was thus subject to an advisory guideline range of 262-327 months of imprisonment. The court varied downward and sentenced Turner to the mandatory minimum sentence — 240 months of imprisonment. 21 U.S.C. 841(b)(1)(A)(amended 2010).

## II.

In this appeal, Turner initially claimed the district court improperly used Turner's void state-court convictions to apply the enhancements and calculate his offense level. In his Reply brief, however, Turner acknowledges that this argument is foreclosed by intervening precedent from the Ohio Supreme Court in *Ohio v. Fischer*, 942 N.E.2d 332 (Ohio 2010). Accordingly, we turn to Turner's claim based on the Fair Sentencing Act.

Turner argues he should be re-sentenced under the Fair Sentencing Act of 2010 ("FSA") and subsequent amendments to the Sentencing Guidelines, which reduce the disparity between crack-cocaine and powder-cocaine offenses from 100:1 to 18:1.

The FSA, enacted on August 3, 2010, amended several statutes to increase the amount of crack-cocaine necessary to trigger mandatory minimum sentences. *United States v. Shepherd*, 408 F. App'x 945, 949 (6th Cir. 2011). Section 8 of the FSA directs the United States Sentencing Commission to:

> (1) promulgate the guidelines, policy statements, or amendments provided for in this Act as soon as practicable, and in any event not later than 90 days after the enactment of this Act, in accordance with the procedure set forth in section 21(a) of the Sentencing Act of 1987 (28 U.S.C. 994 note), as though the authority under that act had not expired; and (2) pursuant to the emergency authority provided under paragraph (1), make such conforming amendments to the Federal sentencing

guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law.

124 Stat. 2372, 2374 (2010)

In accordance with the above directive, the Sentencing Commission issued an emergency amendment to the United States Sentencing guidelines, effective November 1, 2010, that amended § 2D1.1.(c)'s drug quantity table and reduced the base offense level for various quantities of crack cocaine. *Temporary Emergency Amendment to Sentencing Guidelines*, 75 Fed. Reg. 66, 188 (Oct. 27, 2010).

After Turner filed this appeal, the United States Sentencing Commission unanimously voted to make this amendment, now designated Amendment 750 in Appendix C of the United States Sentencing Guidelines, retroactive. The effective date of Amendment 750 is November 1, 2011. U.S.S.G., App. C, at 398.

In *United States v. Carradine,* we held that because "the Fair Sentencing Act of 2010, contains no express statement that it is retroactive nor can we infer any such express intent from its plain language," it does not apply retroactively. 621 F.3d 575, 580 (6th Cir. 2010).

It is undisputed that Turner committed the instant offenses and was sentenced prior to the FSA's enactment.[1] Accordingly, Turner's request for re-sentencing under the FSA is foreclosed by our previous decision in *Carradine.*

---

[1]Turner claims he is nonetheless entitled to application of the FSA because his case is still on direct appeal. However, like Turner, the defendant in *Carradine* also raised his FSA claim on direct appeal.

- 4 -

Turner also argues that the recent guideline amendment would reduce his base offense level from 34 to 26. While this amendment is retroactive, the commentary following Amendment 750 expressly states that "offenders . . . sentenced at the statutory mandatory minimum . . . cannot have their sentences lowered by an amendment to the guidelines." U.S.S.G., App. C, at 394. Because Turner was sentenced to the statutory mandatory minimum sentence, rather than under the crack-cocaine guidelines, Amendment 750 does not affect his sentence.

Next, Turner claims that failure to apply the FSA to cases on direct review violates his right to equal protection and due process under the Fifth Amendment. In support, Turner primarily relies on the Supreme Court's decision in *Griffith v. Kentucky*, 479 U.S. 314 (1987), where the Court held that the new procedural rule announced in *Batson v. Kentucky*, 476 U.S. 79 (1986), applied to cases on direct review. As part of its rationale, the *Griffith* Court stated that "selective application of new rules violates the principle of treating similarly situated defendants the same." *Id.* at 323. Although the Court specifically limited its holding in *Griffith* to "new rule[s] for the conduct of criminal prosecutions," *id.* at 328, Turner attempts to apply *Griffith* to the instant matter by classifying the statutory amendments under the FSA as procedural changes, rather than substantive. This is a stretch. In any event, regardless of the classification, we are bound by the "general savings statute" set forth in 1 U.S.C. § 109. Under 1 U.S.C. § 109:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109.

Unlike situations where the Supreme Court announces a new procedural rule, when Congress repeals a statute § 109 "requires us to apply the penalties in place at the time the crime was committed, unless the new enactment expressly provides for its own retroactive application." *Carradine*, 621 F.3d at 580. *See also United States v. Robinson*, 405 F. App'x 72, 73 (7th Cir. 2010) ("[The defendant] has offered nothing to suggest that *Griffith* applies equally to amendments to *legislation* that alter penalties but create no new rights, procedural or otherwise.").

Turner maintains that § 109 "cannot justify a disregard of the will of Congress as manifested either expressly or by necessary implication in a subsequent enactment." *Great N. Ry. Co. v. United States*, 208 U.S. 452, 465 (1908). We do not disagree; § 109 is intended to effectuate Congress's will. According to Turner, the legislative history of the FSA demonstrates the will of Congress to immediately end the "discriminatory injustice" inherent in pre-FSA sentences. Therefore, applying sentences under the pre-FSA statutory scheme, in accordance with § 109, is contrary to Congressional intent. If § 109 does not apply, Turner asserts, we should follow the common-law abatement rule, which states that the repeal of a statute, or the re-enactment of a statute with different penalties, "abate[s] all prosecutions which ha[ve] not reached final disposition in the highest court authorized to review them." *Bradley v. United States*, 410 U.S. 605, 607-08 (1973).

Although Turner correctly points out that the preamble to the FSA states its goal is to "restore fairness to Federal cocaine sentencing," neither that phrase, nor the legislative history cited by Turner, supports that Congress desired, either expressly or by implication, for the FSA to have retroactive application to sentences already imposed but still on direct review.

In the absence of clear intent by Congress that the FSA should apply retroactively to cases on direct review, compliance with § 109 does not offend Turner's right to due process or equal protection.[2]

Turner additionally argues that applying a pre-FSA sentence to his case constitutes cruel and unusual punishment because the "national consensus" is that the 100:1 crack-cocaine to powder-cocaine sentencing ratio under the pre-FSA statutory scheme is excessive. We have previously held that the twenty-year mandatory minimum sentence for crack-cocaine offenses does not violate the Eighth Amendment's prohibition against cruel and unusual punishments. *See United States v. Dunson*, 940 F.2d 989, 995 (6th Cir. 1991) (*abrogated on other grounds* by *United States v. Ferguson*, 8 F.3d 385 (6th Cir. 1993). Although an individual who commits the same crimes as Turner today will now be subject to a lower mandatory-minimum sentence under the FSA, that does not compel a finding that the pre-FSA sentence is a cruel and unusual punishment.

We are not unsympathetic to Turner's claims. There is, indeed, an element of unfairness in all line drawing. However, because we are concerned with the retroactive effect of a statute, the retroactive/prospective line must be drawn by Congress.

For the reasons stated above, we affirm.

---

[2]To the extent Turner also asserts an equal protection challenge based on the disparate sentences between crack-cocaine and powder-cocaine under the pre-FSA statutory scheme, that claim fails under our prior precedent. *See United States v. Wimbley*, 553 F.3d 455, 463 (6th Cir. 2009).