COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, O'Brien and Fulton
Argued at Norfolk, Virginia


RAYMOND FREDERICK GOSS

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 1978-23-4                JUDGE JUNIUS P. FULTON, III
                                              FEBRUARY 4, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

Helen Randolph, Assistant Public Defender (Robert Marshall,
Assistant Public Defender, on brief), for appellant.

Kimberly A. Hackbarth, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Raymond Frederick Goss appeals from the trial court's judgment that he violated the terms

and conditions of his probation. He argues that the trial court erred by (1) admitting a police report

during his revocation hearing, and (2) finding that he had committed a good behavior violation

based on that report. He maintains that the trial court's rulings violated evidentiary rules and

deprived him of his constitutional due process and confrontation rights. For the following reasons,

we affirm.

BACKGROUND

"On appeal of the revocation of a suspended sentence, the appellate court reviews the

evidence in the light most favorable to the Commonwealth, the party who prevailed below."

*Jenkins v. Commonwealth*, 71 Va. App. 334, 339 n.2 (2019) (citing *Jacobs v. Commonwealth*, 61

Va. App. 529, 535 (2013)). In January 2021, the trial court convicted Goss under a written plea

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

agreement of three counts of grand larceny, petit larceny (third or subsequent offense), larceny with the intent to sell, and possession of burglarious tools. Consistent with the plea agreement, the court sentenced Goss to five years' incarceration, with five years suspended, for the petit larceny (third or subsequent) offense. For each of the remaining offenses, the court imposed six years of incarceration, with three years suspended. The court ordered the sentences to "run concurrently" and conditioned the suspended sentences on Goss's compliance with supervised probation.

Later in 2021, the trial court granted Goss's motion to suspend the unserved portions of his sentences based on his completion of the "Addiction, Corrections, and Treatment" (ACT) program. The court required Goss to "remain substance free and maintain a sober living environment that is conducive to continued recovery." To that end, it also ordered Goss to submit to "any & all substance abuse counseling, testing and/or treatment as directed by [his] Probation Officer."

Goss began supervised probation in October, 2021. In December, 2022, his probation officer reported that Goss "continue[d] to struggle with his drug addiction." In the fall of 2022, he tested positive for cocaine and was referred to an "Intensive Outpatient" treatment program. Nevertheless, he missed treatment sessions and an appointment with his probation officer, and he tested positive for cocaine twice more in November and December, 2022. In addition, Goss "became uncooperative and disrespectful" to probation staff, including telling his probation officer, "I don't need no F'n cracker telling me what to do. I'm not a F'n child. Y'all just want to make F'n money off of me. I don't give a F'n about no PB-13, 14 for a damn technical violation." Goss was referred to a "detox" program, and the probation office transported him to an appointment, but he refused to participate and "left shortly after his arrival." On December

27, 2022, the trial court issued a capias for Goss's arrest; the capias identified the violation of five distinct probation conditions within the probation officer's report.

Goss was arrested on the probation violation capias on January 6, 2023. During that arrest, police found suspected cocaine and drug paraphernalia on Goss's person and charged him with possession of a Schedule I or II controlled substance. Accordingly, Goss's probation officer reported in an addendum to the trial court that Goss had committed a Condition 1 violation based on his new criminal charge. Following the addendum, the trial court issued a rule for Goss to show cause why his previously suspended sentences should not be revoked for a Condition 1 violation based on the new criminal offense. The court recognized it as a distinct probation violation, independent from those violations noted in the probation officer's original major violation report.

On June 23, 2023, the trial court held a revocation hearing on the Condition 1 violation based on the new charge for possessing a Schedule I or II controlled substance.[1] At the hearing, the Commonwealth explained that it had "nolle prossed" the new possession charge and did not "have any evidence to present" at the violation hearing. The trial judge noted that potentially "it's a good behavior violation" and responded, "I can order that there be evidence" and asked whether police found contraband when they arrested Goss on January 6, 2023. The trial prosecutor did not know where the contraband was found but stated that "the laboratory results

---

[1] In February and April 2023, the trial court found that Goss violated the terms and conditions of his probation based on the violation of five distinct probation conditions in the original major violation report. Goss appealed those judgments to this Court, arguing in part that some of his violations should have been treated as a "single technical violation" because they arose from a "single course of conduct" under Code § 19.2-306.1(A). *Goss v. Commonwealth*, Nos. 0423-23-4, 0425-23-4, and 1463-23-4, slip op. at 14 (Va. Ct. App. July 16, 2024). We affirmed the trial court's judgment. *Id.* at 16. In this appeal, Goss does not argue that *this* violation was part of a "single course of conduct" that formed the basis of the prior violations. *See* Code § 19.2-306.1(A).

showed residue." The trial prosecutor did not have the police report and believed that "the nolle prosse" would "resolve the inquiry."

The trial court emphasized that it had separated the various violations contained in the probation officer's reports because it did not "want to presuppose that" Goss was "in violation based upon the possession." Then, after discussing the dispositions of the prior five violations, the court asked the probation officer, who was in the courtroom, "what the [c]ourt could order or otherwise consider to assist in getting" Goss "treatment." The probation officer responded that she had the police report from the new charge and that Goss had repeatedly demonstrated that he would not comply with or complete any treatment. She asserted that ordering any more treatment would be "redundant" and ineffective." The trial court agreed with the probation officer's assessment, instructed her to give the police report to the Commonwealth's Attorney, and stated that it would "take evidence" on "what happened in that circumstance where the residue was found."

Goss objected to the police report's admission into evidence as violating his "rights to confrontation and cross-examination." He also argued that the report's statements were hearsay and that the report did not "include a certificate of analysis" demonstrating that the substance was contraband. The trial court overruled the objection and admitted the report into evidence.

The report was titled, "Arlington County Police Department," written by Officer Keating, and reviewed by Officer Butzer. In the report, Keating stated that he detained Goss on an outstanding warrant around 2:00 p.m. on January 6, 2023. After another officer advised Keating that Goss might be "in the area," Keating saw Goss "walking out of the business park." In a search incident to arrest, Keating "removed Goss's beanie and an approximately 1cm x 1cm bag that had small flakes of a white chalky substance fell out." Keating concluded that the bag contained cocaine based on his training and experience and asked Goss whether he had "any

- 4 -

other narcotics on him or in his backpack." Goss replied that a "marijuana" pipe was in his backpack. Keating searched the backpack and found "a glass smoking stem with a brown/black residue, a plastic dowel with residue, a metal poker rod, [and] a section of copper scouring pad." Keating concluded, again based on his training and experience, that the pipe was "used to smoke crack cocaine." Keating "obtained a warrant" for possession of a Schedule I or II controlled substance, "submitted the suspected narcotics and paraphernalia to Property," and "completed a request for laboratory analysis."

After the trial court admitted the report, Goss reiterated his objections:

[GOSS]: Your Honor, I want to be clear that my objections here are to due process generally. My objection also is that Mr. Goss is not being [given] the right to confront the individual who has --

THE COURT: Right . . . I heard that. I have already overruled it. Any evidence from anybody else?

[GOSS]: Your Honor, I would also note that there's been no testimony establishing the authenticity of the document that the Court has just considered, and that it should not be entered into evidence on that basis. Either -- nor has there been any individual in the courtroom today who has identified Mr. Goss as being the individual subject to that document that the Court has considered without any foundation establishing the document's authenticity.

THE COURT: Okay. Any additional evidence from anyone else?

[THE COMMONWEALTH]: No, Judge.

The court found that the report was "obtained by" the probation office from the Arlington County Police Department (ACPD) and "clearly states what it states." After further discussion, Goss "add[ed]" to his prior objections that "no sworn testimony" demonstrated that the report was submitted to the court from the probation office or that the probation office obtained it from the ACPD. The trial court stated that Goss had "already made that objection."

Neither party presented additional argument. The trial court found that Goss was "in violation of general good behavior" but did not "impose[] any additional time," given the Commonwealth's decision "not to prosecute." The court found that it would not be appropriate to return Goss to supervised probation and, therefore, "clos[ed] the matter out."[2] Goss appeals.

ANALYSIS

I. Police Report Admissibility

Goss argues that admitting the police report into evidence "without first swearing the probation officer and permitting cross examination" of her or Officer Keating "on the authenticity of the police report violated [his] right to due process and confrontation." Goss acknowledges that two tests—the "balancing" test and the "reliability" test—govern the admissibility of hearsay evidence during a revocation proceeding but maintains that the "report and its foundation satisfy neither" test. In his view, the report was not admissible under the balancing test because the probation officer was in the courtroom but "not sworn" and Keating's presence "might easily have been secured, but was not." Next, Goss asserts that the report was not admissible under the reliability test because it was uncorroborated.[3]

"Because parole revocation proceedings occur after a criminal prosecution has ended in a conviction, a parolee is not entitled to the 'full panoply' of constitutional rights to which he was

_____

[2] After finding Goss in violation of the terms of his probation, the trial court did not impose an active period of incarceration nor resuspend the remaining period of incarceration.

[3] Although Goss's assignment of error cites the Virginia Constitution, his argument neither relies on it nor contends that it provides any greater protections than its federal counterpart. Thus, we do not consider any state constitutional argument on appeal. *See* Rule 5A:20(e); *Coward v. Wellmont Health Sys.*, 295 Va. 351, 367 (2018) ("Lack of an adequate argument on brief in support of an assignment of error constitutes a waiver of that issue." (quoting *Andrews v. Commonwealth*, 280 Va. 231, 252 (2010)). Goss's assignment of error also suggests that the trial court erred by admitting the report because there was no "sworn foundation for its authenticity." His argument, however, focuses solely on the two tests for admitting hearsay evidence in a revocation proceeding without addressing whether the report was properly authenticated. Thus, any such argument is also waived.

entitled at trial." *Henderson v. Commonwealth*, 285 Va. 318, 325 (2013) (quoting *Morrissey v. Brewer*, 208 U.S. 471, 480 (1972)).  The "same constitutional principles appl[y] in probation revocation hearings."  *Id.*  "Although the Sixth Amendment right of confrontation applies only in criminal trials, a more limited right of confrontation was included in the Due Process Clause of the Fourteenth Amendment, applicable to . . . probation revocation proceedings."  *Id.* at 325-26.

Consistent with the above, "[h]earsay is frequently admitted in revocation proceedings" even if it "would not be admissible in an adversary criminal trial."  *Id.* at 326 (citing *Morrissey*, 208 U.S. at 489).  "Hearsay that is testimonial in nature, however, is subject to the limited confrontation right provided by" the Due Process Clause of the Fourteenth Amendment.  *Id.* Thus, testimonial hearsay "may be admitted only when 'the hearing officer specifically finds good cause for not allowing confrontation.'"  *Id.* (quoting *Morrissey*, 408 U.S. at 489).  "We review whether the admission of evidence violated the right of confrontation and 'whether a particular category of proffered evidence is testimonial hearsay' de novo, but 'we do not substitute our judgment for that of the trial court' in considering discretionary matters."  *Logan v. Commonwealth*, 71 Va. App. 568, 574 (citation omitted) (first quoting *Cody v. Commonwealth*, 68 Va. App. 638, 658 (2018); and then quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)), *aff'd on reh'g en banc*, 72 Va. App. 309 (2020).

"'Two tests have emerged for determining whether the denial of the right to confrontation . . . will comport with constitutional due process.  The first, the "reliability test," permits admission of testimonial hearsay in revocation proceedings if it possesses substantial guarantees of trustworthiness.'"  *Saunders v. Commonwealth*, 62 Va. App. 793, 808 (2014) (quoting *Henderson*, 285 Va. at 327).  Circumstances demonstrating that testimonial hearsay is reliable include:

- 7 -

1) Detailed police reports (as opposed to mere summaries of such reports by probation officers, (2) affidavits or other hearsay given under oath, (3) statements by the probationer that directly or circumstantially corroborate the accusations, (4) corroboration of accusers' hearsay by third parties or physical evidence, (5) statements that fall within a well-established exception to the hearsay rule, (6) evidence of substantial similarities between past offenses and the new accusations that bolsters the accuser's credibility, and (7) a probationer's failure to offer contradictory evidence.

*Id*.

"'[T]he second test, the "balancing test," requires the court to weigh the interests of the defendant in cross-examining his accusers against the interest of the prosecution in denying confrontation.'" *Id.* at 808-09 (quoting *Henderson*, 285 Va. at 327-28). A trial "court may apply either test, as may be most appropriate in the circumstances." *Id.* at 809 (quoting *Henderson*, 285 Va. at 328). Moreover, a trial court's "silence 'as to any ground upon which [it] may have relied in finding good cause' allow[s] [this Court] to 'make an independent review of the record to ascertain whether there was sufficient credible evidence before [the trial court] to support a finding of "good cause for not allowing confrontation."'" *Cox v. Commonwealth*, 65 Va. App. 506, 520 (2015) (quoting *Henderson*, 285 Va. at 327).

Here, Officer Keating's detailed police report was properly admitted over Goss's due process and confrontation objections under the reliability test. To begin, the report was a first-hand account of what an investigating officer saw and did while detaining, arresting, and searching Goss's person, not a "mere summar[y] of such reports by probation officers." *Henderson*, 285 Va. at 327. Keating noted the date and time of day he was looking for Goss, what caused him to search for Goss, and where he found him. Specifically, the report indicated he was looking for Goss around 2:00 p.m. on January 6, 2023, and he arrested him shortly after spotting and detaining him. Those details were corroborated by the record in this case, which indicates that the capias for Goss's arrest was executed at 3:25 p.m. on January 6, 2023.

The police report also detailed the suspected contraband's location, packaging, and appearance, including how it fell from Goss's "beanie" during a search incident to arrest. The report even recorded details of a conversation between Keating and Goss, in which Keating asked Goss whether he had "any *other* narcotics on him," and Goss admitted that a "marijuana" pipe was in his backpack. Goss's response was incriminating as it accepted Keating's assumption that the white substance he found was in fact a narcotic. *Cf. Lynch v. Commonwealth*, 272 Va. 204, 209 (2006) (proving that a party may adopt a statement by another "in any number of ways, including words, conduct, or silence"). Thus, the response would have been admissible against Goss, even at a criminal trial, and it corroborated the rest of Keating's statements contained in the police report. *See* Va. R. Evid. 2:803(0)(A) (providing that "[a] statement offered against a party that is . . . the party's own statement" is not "excluded by the hearsay rule"). Moreover, after relating Keating's conversation with Goss, the police report identified the particular items he found while searching Goss's backpack.

The above circumstances demonstrate that the testimonial hearsay contained in the detailed and corroborated police report possessed substantial indicia of trustworthiness. *See Saunders*, 62 Va. App. at 808 ("Evidence consisting of 'a report from one social worker, a government official, to another' is evidence of reliability and possesses 'substantial guarantees of trustworthiness.'" (quoting *Henderson*, 285 Va. at 327)). Thus, the trial court did not violate Goss's due process and confrontation rights by admitting the police report into evidence during his revocation hearing. Because we find that the police report satisfied the reliability test, we need not consider whether the report was also admissible under the balancing test. *Henderson*, 285 Va. at 328 ("The court may apply either test, as may be most appropriate in the circumstances.").

II.  Probation Violation

Because the trial court properly found Goss in violation of the terms of his probation, and because the final revocation orders merely reflect a "general" violation of the terms of probation, we need not address whether the trial court erred in finding Goss violated good behavior conditions rather than technical conditions.  Indeed, although Code § 19.2-306.1(A) and (B) limit a trial court's authority to impose an active sentence based on the nature of the violation, the trial court here imposed no active incarceration for the violation and, therefore, did not exceed its sentencing authority regardless of the nature of Goss's violation.  *See Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 193-94 (2023) (outlining the process for determining the nature of a probationer's violation).

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*