## UNITED STATES v. AUERBACH et al.

No. 18914.

District Court, S. D. California, C. D.

Nov. 4, 1946.

James M. Carter, U. S. Atty., and Walter S. Binns, Asst. U. S. Atty., both of Los Angeles, Cal., for plaintiff.

Morris Lavine, of Los Angeles, Cal., for defendant Auerbach.

Louis P. Pink, of Los Angeles, Cal., for defendant Blackburn.

HALL, District Judge.

In the matter of U. S. v. Auerbach and the related cases, I have come to a conclusion on the motions to dismiss. I have not had time to formalize my views but I think in justice to counsel and for their guidance in this and future cases, as well as for anyone who might care to have the benefit of my thoughts on the subject, it would be preferable if I should express the reasons for the conclusions which I will shortly announce.

Each of the indictments charges the defendants with violations of the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 901 et seq., in connection with rental regulations. All of the acts alleged to have been performed by the defendants occurred prior to June 30, 1946. Some of the charges are contained in indictments where conspir-

778

acy counts are alleged as well as substantive offenses, and some of the charges are contained in informations where no conspiracy is charged.

The motion to dismiss is made on several grounds. It was voiced on behalf of all of the defendants in the various cases by the motion filed by Mr. Lavine.

■ His point No. 4 is that each of the transactions as set forth was a transaction for services in securing an accommodation and dwelling and were not and are not charges for rent. I do not think that the Act or the regulations are so narrowly construed and must rule against the defendants on that point.

■ On point No. 5 it is asserted—and point No..6 is the same only as to different counts—that the indictment does not show that the defendant Jacob Louis Auerbach was or is the owner of property or a person who came within the jurisdiction or authority of the Emergency Price Control Act of 1942. I do not think the Act or the regulations were intended to be or can be construed as narrowly in so far as an alleged violation is concerned, and must therefore rule against the defendants on those points.

The other point is that the action cannot be maintained because the Emergency Price Control Act, as amended on June 30, 1945, expired on June 30, 1946, and with that expiration all of the powers to prosecute, or punish, or proceed, terminated by virtue of the failure of Congress to reenact the statute prior to that date, and assuming it to be in violation of the Act and the rent regulations, nevertheless the action cannot be maintained because of the provision in Section 1(b) which saves only "any proper suit, action, or prosecution" which was theretofore commenced. The proposition is based upon the portion of Section 1(b) which reads as follows: " * * * except that as to offenses committed, or rights or liabilities incurred, prior to such termination date, the provisions of this Act and such regulations, orders, price schedules, and requirements shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense."

The argument of the defendants is that the word "sustaining" by dictionary definition and in its common and accepted use conveys, and was intended by Congress in the Act to convey, the idea that before any action, suit or prosecution could be sustained it must have been commenced by actual court proceedings on or before June, 30, 1946.

The argument of the Government, on the other hand, is that the word "sustaining" does not have any such limited use or meaning in the statute but is intended to reserve to the Government the right to proceed at any time within the period of the statute of limitations to enforce by criminal prosecution any liability incurred for violation of the Act which happened before June 30, 1946.

The defendants further contend that by the amendment of the Act on July 25, 1946 a restriction and definition was given to the term "sustaining any proper suit," etc., which expressly limits prosecutions to those which were pending in court on June 30, 1946.

■ Any analysis of the questions raised here involving at least four statutes must begin with a view of the common law. It must be conceded that under the common law, and the case law in this country until 1871, the repeal of a statute acted as a remission of all offenses committed under that statute and amounted to the withdrawal of the power to prosecute or the courts to hear or to punish. But in 1871 the statute, which is now Title 1, § 29, U.S.C.A., was enacted. It being an exception to the common law, and this being a criminal case, that statute must be strictly construed.

At the time of the enactment of the Emergency Price Control Act in 1942 that statute read as follows: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

■ Now the Emergency Price Control Act was a different kind of a law than is usually enacted. It was a law which was not contemplated to ever be repealed. It was a law which was enacted for an Emergency which Congress fixed for a special term, and it was contemplated that it would expire upon the occurrence of any one of three events: (1) a specific date, (2) a proclamation by the President that the emergency was over, or (3) a concurrent resolution by Congress that the emergency was over. Thus the Act did not contemplate that there ever should be a repeal, and before Section 29 of Title 1 could become effective there must be a repeal of a statute as distinguished from the expiration of a statute. It is logical that Congress should have had that in mind in drawing the Emergency Price Control Act of 1942 and thus put in its own saving clause which says that which I have heretofore read in almost the identical language of Section 29 of Title 1.

However, the Act as originally amended had a short life and was from time to time extended by act of Congress which put the date forward.

In 1944 Congress, no doubt having in mind not only the Emergency Price Control law but many other emergency statutes which had a definite period for their life, enacted an amendment to Section 29 which provided as follows: " * * * The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

So whether the Emergency Price Control Act had or had not a specific saving clause, unless it were repugnant and completely inconsistent with that general savings provision, there would be the right to prosecute after the expiration of the statute, provided that the word "sustaining" and the word "proper" included and contemplated any suit filed after the expiration date of the statute.

It has been somewhat difficult to reconcile the word "sustain" with the position taken by the Government. However Section 29 of Title 1 has been considered by the courts in several cases. Lang v. United States, 7 Cir., 133 F. 201, gave consideration to it in connection with an immigration law which had a special savings provision. In the case of United States v. Reisinger, 128 U.S. 398, 9 S.Ct. 99, 32 L.Ed. 480, it was given consideration by the Supreme Court. Then in the case of Great Northern Railway Company v. United States, 208 U.S. 452, 28 S.Ct. 313, 52 L.Ed. 567, the matter was before the Supreme Court in connection with the repeal of the Elkins Act, 49 U.S.C.A. § 41 et seq., by the enactment of the Hepburn Law, 34 Stat. 584, relating to rate rebates. In all of those cases they failed to adopt the contentions which were made that the word "sustain," or similar words such as "begun" contemplated that the action had to be commenced before the date of repeal. If I construe the law as to the word "sustain" as contended for by the defendants, it would be to place a premium, or for me to hold that Congress in enacting the Emergency Price Control Act in the setting which it did, which was all-out war, intended at that time to place a premium on one's ability to avoid detection for a criminal act or an act which Congress condemned as criminal, and would amount to statutory inducement to the law's violation if one were, in addition to being a violator, also clever enough or criminal enough to conceal his misdoings.

Moreover, to uphold the defendants' contention as to the use of the word "sustain" I would have to wholly disregard the general statute of limitations concerning the three-year power to prosecute, because that would destroy the statute of limitations.

For those reasons I cannot agree with the defendants' contention as to the meaning of the word "sustain."

■ It is tied in, however, with the word "proper," and the question becomes, what is a "proper" suit, action or prosecution. I think that what Congress intended, looking alone at the Act as it existed before June 30, 1946, was that any defense was avail-

able to anyone who might be proceeded against after the expiration of the Act, except the defense that the action was not started before June 30, 1946.

But the Act as of June 30, 1946, does not stand alone because we have the Act of July 25, 1946. The problem then becomes one to determine whether or not under the Act of July 25, 1946, it was expressly provided for the termination of the power to punish, which of course means the power to prosecute.

Turning to that Act of July 25, 1946, we find the first pertinent amendment to be to Section 1 (b) by the insertion of the words "June 30, 1947"; and we find also in the Senate committee's report a statement to the general effect that that amendment should be read in conjunction with Section 18 of the Act of July 25, 1946, 50 U.S.C.A.Appendix, § 901a note.

The pertinent provisions of Section 18 are: "Any proceeding, petition, application, or protest which was pending under the Emergency Price Control Act of 1942, as amended, or the Stablization Act of 1942, as amended, on June 30, 1946, shall be proceeded with and shall be effective in the same manner and to the same extent as if this Act had been enacted on June 30, 1946."

So the question is whether or not that wording so limits the language of Section 1 (b) and Section 29 of Title 1 U.S.C.A. as to define "any proper suit, action, or prosecution" to be only a "proceeding * * * which was pending * * * on June 30, 1946."

The first thing to take into consideration is whether or not, in view of the difference in language between Section 1(b), a "suit, action, or prosecution," mentioned in Section 1(b), is a "proceeding" as that word is used in Section 18. It is unnecessary, I think, to determine whether or not the word "proceedings" covers civil suits or actions because the word "prosecutions" is also used, and certainly this is a prosecution.

So to determine whether or not these are "proceedings," we first of all have recourse to the general law. At common law, an equity case was referred to as a

"suit" in equity, and a law case was referred to as an "action" at law. But for many years in this country any kind of a lawsuit, any kind of a proceeding, has been referred to as a "proceeding." There is a "proceeding" before a commissioner, there is a "proceeding" before any kind of a public body, also "proceedings at law," "proceedings in equity," "proceedings in bankruptcy," "proceedings" before the Immigration Department—the word has a very wide use. I think in common acceptation and use that the word "proceedings" includes a lawsuit of any kind, suit, action, or prosecution, although not necessarily limited to actions or prosecutions in a court.

We also have recourse to the Federal Rules of Criminal Procedure, which were adopted and in effect on the date of this amendment, and Rule 1 says: "These rules govern the procedure in the courts of the United States and before United States commissioners in all criminal proceedings * * *."

Rule 2 uses the word "proceeding," and throughout the Federal Rules of Criminal Procedure the words "criminal proceedings" and "proceedings" are used constantly.

If there were any doubt about what was meant by the word "proceedings" it is settled in the Act of 1946 and the Act as theretofore amended in 1945. In Section 204(e) (2), for instance, we find the following: "In any proceeding brought pursuant to section 205 of this Act or Section 37 of the Criminal Code involving alleged violation of any provision of any such regulation, order or price schedule [or requirement thereunder], the court shall stay the proceeding—" And it is used again elsewhere and many times throughout the Act.

Section 205 is the section relating to enforcement and criminal prosecutions and there specifically under Subsection (b) criminal prosecutions are referred to as "proceedings," and likewise under Subdivision (c), and throughout the Act, the term is used. Therefore I do not believe there is any doubt but what Congress, when it used the word "proceedings" in Section 18 of the July 25, 1946, Act intended to refer to criminal prosecutions as "proceedings."

The question now narrows down to whether or not the language of Section 18, by mentioning only proceedings, etc., which were "pending * * * on June 30, 1946," under the rule of construction adverted to ante *inclusio unius est exclusio alterius,* excluded from the savings clause of Section 1(b) all proceedings, etc., not actually pending on June 30, 1946.

The answer must be found in reason and in authority. In that connection, Great Northern Railway Company v. United States, 208 U.S. 452, 28 S.Ct. 313, 52 L.Ed. 567, provides both the authority and the reason applicable to this case.

In that case a prosecution was brought under the Elkins Act after its repeal by the adoption of the Hepburn Law. And in that case the Court said that every statute of the United States must be construed as if Section 13 of the Revised Statutes (now Section 29 of Title 1) were specifically and literally and actually a part of the law and were enacted by Congress on each separate occasion. There was a special provision, however, in the Hepburn Law which stated that "the amendments herein provided for shall not affect causes now pending in courts of the United States, but such causes shall be prosecuted to a conclusion in the manner heretofore provided by law." 34 Stat. 595.

The Court construed that phrase "now pending" in connection with the enactment of the subsequent statute, and then reached the conclusion (I am reading from 208 U.S. at page 467, 28 S.Ct. at page 317, 52 L.Ed. 567) to the effect that that provision commanded "that the new remedies should not be applicable to causes then pending in the courts of the United States gives significance to the whole clause, and serves to make clear the fact that the legislative mind was concerned with the confusion and uncertainty which might be begotten from applying the new remedies to causes then pending in the courts, and demonstrates therefore that this subject, and this subject alone, was the matter with which the provision in question was intended to deal."

In other words, the phrase as used in the Hepburn Act intended to exclude the remedies and rights which were given by the Hepburn Act to cases which arose under the Elkins Act. But in Section 18 of the July 25, 1946, Act Congress intended to give to cases which were filed before June 30, 1946, the benefit of whatever rights or remedies were contained in the July 25, 1946, Act. As the phrase was used in the Hepburn Law it excluded benefits; as the phrase is used in the July 25, 1946, Act, it includes the benefit of all the amendments and, in my judgment, lays the law of July 25, 1946, as the pattern or the norm by which cases must be judged if they were commenced before June 30, 1946, as well as cases which might be commenced after June 30, 1946.

I will try to state that over again. My conclusion, with relation to that amendment, is that a criminal prosecution is a "proceeding" as that word is used in Section 18; that it is a "proper" proceeding if filed subsequent to June 30, 1946; and that by Section 18 any criminal prosecution, whether filed before June 30, 1946, or after June 30, 1946, is to be judged by the penalties, the powers, the duties and the rights prescribed by the 1946, law as they affect or modify or change the Act as it existed prior to 1946.

I will illustrate what I mean. The Act of July 25, 1946 is not merely an amendment of the previous law but in Section 1(A), 50 U.S.C.A.Appendix, § 901a Congress again declares the objects, policies and purposes of the law. Throughout the Act you will find some commodities exempted, restrictions and powers put upon the Secretary of Agriculture, the Office of Price Administration, different provisions as to the Price Decontrol Board and the like. Section 12(b) of the Act of July 25, 1946, for instance, provides that Section 205(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 925(e), is amended by adding at the end thereof the following new paragraph: "The Administrator may not institute any action under this subsection on behalf of the United States, or, if such action has been instituted, the Administrator shall withdraw the same—(1) if the violation arose because the person selling the commodity acted upon and in accordance with the written advice and instructions of the Administrator * * *."

Such a defense would be available if the action was "pending" on June 30, 1946 and would certainly be available if commenced after June 30, 1946.

In other words, the 1946 Act, drawn as it was at a different time and under a different "climate" than the 1942 Act, was intended by Congress to provide different norms and standards.

By the interpretation I have given, each part of each law is given effect and so construed the provisions of the various laws are consistent with each other.

■ Judged by reasons and conclusions I have outlined, all of the substantive offenses in the various proceedings are properly charged, and the motion to dismiss must be denied.

A query exists, however, as to the conspiracy charges. Each one of them charged that the defendants, "heretofore, to wit, prior to the dates of commission of the overt acts set forth, and continuously thereafter to and including the date of the filing and presentation of this indictment," which was, I think in each case, on October 2nd, "did conspire, etc. * * *."

Adverting again to Section 18 of the July 25, 1946 Act, it reads in part: "* * * provided further, That no act or transaction, or omission or failure to act, occurring subsequent to June 30, 1946, and prior to the date of the enactment of this Act shall be deemed to be a violation of the Emergency Price Control Act of 1942, * * * as amended, or of any regulation, order, price schedule, or requirement under either of such Acts."

[11] This creates a hiatus of innocence for a period of time when it was impossible for anybody to commit a crime or to conspire. Consequently during that period, from June 30, 1946, until July 25, 1946, nobody could conspire to violate either the old act or the new act. For that reason the indictments as drawn, in so far as the conspiracy counts are concerned, do not state an offense, and the motions to dismiss those counts are granted.