### WOODS v. JACEY MANAGEMENT CORPORATION et al.

District Court, S. D. New York.

June 7, 1948.

Sylvan D. Freeman, Chief, Rent Litigation Section, Office of the Housing Expediter, of New York City (J. Saul Broun-

stein, Litigation Attorney, of New York City, of counsel), for plaintiff.

Harold Morse, of New York City (Jack Newton Lerner, of New York City, of counsel), for defendants.

BYERS, District Judge.

The complaint herein was filed on July 18, 1946, and alleges a violation of Section 4(a) of the Emergency Price Control Act of 1942, as amended, Title 50 U.S.C.A. Appendix, §§ 901–925, and a violation of Rent Regulation for Housing in New York City Defense-Rental Area, and seeks an injunction and treble damages.

The premises involved are 519 West 121st Street, New York City.

Paragraph 5 of the complaint alleges that, during the period of one year prior to commencement of the action, defendants demanded and received rents higher than the maximum rents established by said Rent Regulation for the use and occupancy of said housing accommodations.

Paragraph 6 alleges: "More than 30 days have elapsed since the occurrence of the aforementioned overcharges and the tenants so overcharged have not instituted any action for damages on account of such overcharges, pursuant to Section 205(e) of the Act."

The case was tried on a stipulated statement of facts which may be summarized as follows:

Between August of 1944 and September of 1945, the defendants changed seven apartments in the said premises from unfurnished to furnished, and registration statements were mailed within 30 days after the said changes to the Lower Manhattan Area Rent Office at 535 Fifth Avenue in this City, instead of to the Upper Manhattan Area Rent Office at 541 West 145th Street.

There is no proof that such a mailing was legally insufficient because the division of the area was for convenience of administration; it would seem that a mailing to one of the Administrator's offices in the area, within 30 days from the actual period of rental, is all that the law requires.

The defendants do not concede that the testimony concerning the mailings would be relevant, or that they were in fact made. In the absence of testimony to the contrary, however, it is not deemed that there is any issue of fact in this connection.

Thereafter, pursuant to demands made by the Enforcement Division of the Office of Price Administration, a second set of registrations were mailed to the Lower Manhattan Area Rent Office, and these seem to have been forwarded to the Upper Manhattan Area Rent Office. That was done subsequent to the 30 days following the first rental.

The magic in this situation seemingly is that, if registrations had indeed been filed within 30 days after the first date of rental, the authority of the area rent director to reduce such rents would be limited to orders of prospective operation only; the area rent director, deeming the first registrations not to have been filed, and having ordered the filing of new ones, could make his orders retroactive to the first date of the original renting. It is this retroactive set of figures, multiplied by three, which the plaintiff relies upon in bringing suit.

On June 11, 1946, such retroactive orders were issued by the rent director, reducing the rentals of six of the seven apartments, and on June 19, 1946, similar action was taken with reference to the remaining apartment, and all of those orders are deemed to be in evidence.

On July 11, 1946, the defendants submitted to the rent director a check (not certified) for the full amount of the overcharges according to the said orders, at the Upper Manhattan Area Rent Office; that is to say, a check in full for all the refunds together with a notice of departmental appeal from those orders; and the check was returned on July 16, 1946, but the reason for such return is in dispute: The plaintiff asserts that the check was returned because it was uncertified, while the defendants would have testified that the check was returned by some one in the office of the director, who stated that the OPA was not in control at that time and that the office

did not know whether it had authority to accept the check.

The latter is a likely statement because the Emergency Price Control Act terminated on June 30, 1946, and between that date and July 25th there was a lapse in applicable regulatory legislation because the Extension Act of 1946 was passed on the latter date, and in many important respects it differed from the earlier law.

I am satisfied that on July 11, 1946, an attempt to procure a reconsideration of the said orders on departmental appeal was made, and although it was not properly followed up, it is consistent with a belief in the merits of the landlords' contentions. It is not clear that a departmental review would have been entirely unfavorable to the defendants, at least the Court can not so assume. What was attempted at least negatives any purpose to ignore the reduction orders, i. e., to indulge in wilful conduct with respect to governmental authority.

Section 18 of the Act of July 25, 1946, 50 U.S.C.A.Appendix, § 901a note, provides: "The provisions of this Act shall take effect as of June 30, 1946 * * * Provided further, That no act or transaction, or omission or failure to act, occurring subsequent to June 30, 1946, and prior to the date of enactment of this Act shall be deemed to be a violation of the Emergency Price Control Act of 1942, as amended or the Stabilization Act of 1942 as amended, or of any regulation, order, price schedule or requirement under either of such Acts– * * *" The bearing of this proviso will be considered presently.

Since the tenants had the right to sue for the indicated refunds so long as the orders remained unchanged, the right of the Administrator to bring the present action did not come into existence until the expiration of the period within which the tenants could sue.

This means that the defendants had 30 days within which to comply with the said orders, or until July 11th as to six of the apartments and July 19th as to the seventh; in the event of their failure so to do, the tenants could bring action on their own behalf for refunds during the *ensuing pe-*

*riod* of 30 days; until the expiration of the latter, the cause of action of the Administrator (50 U.S.C.A.Appendix § 925(e)) did not exist. The applicable language is:

"If any person selling a commodity (i. e., a landlord) violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the *date of the occurrence of the violation* or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period. If such action is instituted by the Administrator, the buyer shall thereafter be barred from bringing an action for the same violation or violations." (Italics supplied.)

The violation occurred (assuming for argument that the landlords failed to timely appeal to the departmental reviewing agency by depositing check for the apparent overcharges, etc.) when the orders were disobeyed, but since the opportunity to comply, or to so appeal, continued until July 11, 1946, and July 19, 1946, respectively, those are the dates when the violations took place, Woods v. Stone, 333 U.S. 472, 68 S. Ct. 624. It was on those dates that the right arose on the part of the tenants and it continued for thirty days. In other words, no cause of action existed on the part of the Administrator when this complaint was filed on July 18, 1946.

■■ Since this is a punitive form of litigation, the status of the plaintiff must be closely scrutinized (Bowles v. Nasif, D. C., 58 F.Supp. 644), with the result that his alleged cause of action must be dismissed as having no legal basis at the time of its institution.

■ The plaintiff urges none-the-less that relief should be granted under subdivision (a) of the statute, Section 205(a) of the Emergency Price Control Act of 1942, as amended, whereby the Court is clothed with power to order restitution of rents collected by a landlord over and above the reduced schedule fixed by the said orders.

In other words, the Court is asked to exercise its equitable function in accordance

with the teaching of Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332, even though the Administrator had no right to bring this suit on July 18, 1946.

Attention is thus invited to the equitable aspect of the plaintiff's cause, and in the opinion presently held, there is a lack of requisite showing.

It appears that these defendants made an effort in good faith to invoke the appellate procedure within the office of the Administrator to procure a reconsideration of the orders to which reference has been made, on the theory that the reductions in rental for these furnished apartments were too drastic in view of all the circumstances.

What actually happened, following the return of the check above recited, is that on August 7, 1946, the defendants wrote a letter to the plaintiff's office, which is in evidence, reciting the tender of the check on July 11th covering the retroactive award, and the return thereof in connection with the application for review. The request was made that new orders be issued so that appeals therefrom within the Administrator's office could be prosecuted, but as has been stated, this action had already been instituted, and the Administrator's office refused to deal with the defendants' request.

When the case was first called for trial before me, I pointed out to the plaintiff's attorney that the Court could not hope to reach a sensible conclusion on the subject of a refund in the absence of such an administrative review as the defendants had sought. I suggested an adjournment of the case and cooperation on the part of the plaintiff's office to reinstate the appeal and dispose of it in due course without regard to the prior unsuccessful efforts which had been made to accomplish that result, and the Court was assured that this suggestion would be given due consideration.

For some reason, the plaintiff's office found it inexpedient to comply with the Court's request, although it is difficult to believe that, if a sincere effort to that end had been made, it would have come to nothing.

I am satisfied that these landlords have tried to comply with the law, for of course the new scale of rentals fixed by the plaintiff's office has been adhered to ever since the orders were issued, and I am equally satisfied therefore that an injunction would serve no useful purpose. Further, that since the plaintiff is not willing to take the trouble to put the Court in possession of the kind of data that would enable it to reach a fair and equitable computation of an amount to be exacted as restitution, the necessary basis is lacking upon which a sensible judgment could be entered on this branch of the case.

This reasoning deals with the merits and avoids the legal infirmity of the plaintiff's standing heretofore pointed out. I should suppose that decision could well rest on the proposition that the plaintiff's asserted cause did not exist on July 18, 1946, for any purpose whatever, whether it be called legal or equitable.

An additional reason for deciding in defendants' favor is the language which has been quoted from the Act of July 25, 1946. As has been seen, the omissions to act occurred on the dates of the assumed violations, July 11, 1946, and July 19, 1946, and by the direction of Congress they are not "deemed to be a violation of the Emergency Price Control Act of 1942, as amended * * *".

The period of immunity for alleged offenses against the Emergency Price Control legislation said to have been committed between June 30, 1946, and July 25, 1946, has received the notice of the Courts: Porter v. Shibe et al., 10 Cir., 158 F.2d 68, at page 71; Kersten v. United States, 10 Cir., 161 F.2d 337, at page 339; and United States v. Auerbach et al., D.C., 68 F.Supp. 776, at page 782.

For all of these reasons, judgment is ordered for defendants, dismissing the complaint on the merits.

If Findings are desired, they may be settled on notice, within 10 days.