**RHEINBERGER v. REILING et al.**

Civ. No. 1593.

United States District Court
D. Minnesota, Third Division.

March 22, 1950.

John W. Graff, of Hoffmann, Donohue, Graff & Meier, St. Paul, Minn., for plaintiff.

Gerhard Bundlie (of Bundlie, Kelley, Finley & Maun), St. Paul, Minn., for defendants.

DONOVAN, District Judge.

By this action plaintiff seeks to recover an overcharge of $3,300.00, claiming liability incurred in that sum under the Veterans' Emergency Housing Act of 1946, 50 U.S.C.A.Appendix, § 1821 et seq.,[1] and the Housing and Rent Act of 1947, 50 U.S.C.A. Appendix, § 1881 et seq.,[2] referred to herein, jointly, as the Acts.

1. "Sec. 1. * * *

"(b) The provisions of this Act, and all regulations and orders issued thereunder, shall terminate on December 31, 1947, or upon the date specified in a concurrent resolution by the two Houses of the Congress, declaring that the provisions of the Act are no longer necessary to deal with the existing national emergency, whichever date is the earlier.

*   *   *   *   *   *   *

"Sec. 5. It shall be unlawful for any person to effect, either as principal or broker, a sale of any housing accommodations at a price in excess of the maximum sales price applicable to such sale under the provisions of this Act, or to solicit or attempt, offer, or agree to make any such sale. It shall be unlawful for any person to violate the terms of any regulation or order issued under the provisions of this Act. Notwithstanding any termination of this Act as contemplated in section 1 (b) hereinabove, the provisions of this Act, and of all regulations and orders issued thereunder, shall be treated as remaining in force, as to rights or liabilities incurred or offenses committed prior to such termination date, for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense.

*   *   *   *   *   *   *

"Sec. 7. * * *

"(d) If any person selling housing accommodations violates a regulation or order prescribing a maximum selling price, the person who buys such housing accommodations may, within one year from the date of the occurrence of the violation, bring an action for the amount by which the consideration exceeded the maximum selling price, plus reasonable attorney's fees and costs as determined by the court.

"Sec. 8. As used in this Act—

"(a) The term 'maximum sales price' means the maximum price for which any housing accommodations the construction of which is completed after the effective date of this Act may be sold and includes the total consideration which may be paid by the buyer for such housing accommodations with accompanying land and improvements, excluding only those incidental charges, such as brokerage fees or commissions or charges, which buyers or sellers of such housing accommodations customarily assume in the community where such accommodations are located and which actually have been incurred for services rendered at the buyer's or seller's request." 60 Stat. 207.

2. "Section 1. (a) Sections 1, 2 (b) through 9, and sections 11 and 12, of Public Law 388, Seventy-ninth Congress, are hereby repealed, and any funds made available under said sections of said Act not expended or committed prior to the enactment of this Act are hereby returned to the Treasury: Provided, That any allocations made or committed, or priorities granted for the delivery, of any housing materials or facilities under any regulation or order issued under the authority contained in said Act, and before the date of enactment of this Act with respect to veterans of World War II, their immediate families, and others, shall remain in full force and effect."

Answering separately, defendants deny liability, challenge the jurisdiction of the court and plead the one year statute of limitations.

Much of the evidence is undisputed. Plaintiff was interested in buying a home. He read of one advertised for sale by defendant Kenna, a realtor. Not desiring the advertised house, plaintiff inquired if Kenna had any others for sale. Kenna then showed him one of three dwellings being constructed, designated as 1950 Rome Avenue, and herein referred to as "the premises". The house was almost completed. Plaintiff then asked what the sale price was, and was informed it could be bought for about $11,000.00. Plaintiff then indicated his interest in purchasing the premises and Kenna said he would have to take the matter up with the owner, who was the building contractor, following which Kenna telephoned plaintiff, saying Reiling wanted $11,500 to $11,700 for the property. The next day plaintiff called at Kenna's office and offered $11,500.00 for the premises, and was told by Kenna that Reiling was asking $11,700.00. To this price plaintiff agreed. Kenna thereupon prepared the customary earnest money contract in duplicate, wherein Reiling was described as "owner". It was executed on November 28, 1947. The signatures were plaintiff's, and "William A. Reiling, Owner, by John J. Kenna, Agent." Among other conditions therein was the following: "It is understood and agreed that this sale is made subject to the approval by the owner of said premises in writing and that the undersigned agent is in no manner liable or responsible on account of this agreement, except to return or account for any of the purchase money paid to him under this contract."

Unknown to plaintiff was Reiling's arrangement with the National Housing Agency, Federal Housing Administration, herein referred to as the Agency. This is described by Reiling in his answer.[3] On November 10, 1947, Reiling applied to the Agency to increase the ceiling price on the house being constructed next to the premises herein from $8,300.00 to $10,605.00. This application was granted. On December 4, 1947, a like application was made to the Agency by Reiling, requesting permission to increase the ceiling price on said premises from $8,400.00 to $11,700.00. This request for an increase was not acted upon.

Early in December plaintiff, a lawyer by profession, was advised by defendants that title would not be transferred, nor would possession be given plaintiff until after the first of the year. He thereupon made inquiry of the Agency in Minneapolis and was told of the ceiling price on the premises. He promptly called on Kenna, demanding that the ceiling price be accepted in lieu of that agreed upon in the contract. Kenna then offered to return the earnest money to plaintiff and call the deal off. This was declined by plaintiff, with the comment that he wanted the house.

Thereafter plaintiff visited the premises from time to time, observing progress in

---

3. "Alleges that this defendant filed, on April 23, 1946, with the National Housing Agency, Federal Housing Administration, his application, Form CPA-4386, dated April 11, 1946, for preference rating under Priorities Regulation 33 as amended, covering the project designated by said Agency as Serial No. 66-092-00543, for construction of three (3) one-family residential units or houses on the three (3) tracts of land in said application described, one of said tracts being Lot Twenty-two (22) and the West Ten (10) feet of Lot Twenty-one (21), Block One (1), Highview Addition in St. Paul, Ramsey County, Minnesota; that attached to said application were the proposed plans or specifications for such construction.

"That on May 13, 1946, said Agency did approve said application and plans and authorized a maximum sales price of Eight Thousand Seven Hundred Dollars ($8,700.00) for said above described land and the house to be constructed thereon.

"That this defendant thereafter duly commenced construction of said house on said premises but, by reason of shortage of certain materials and because of other reasons beyond this defendant's control, said house was not substantially completed until December of 1947."

the construction, suggesting ideas relative to landscaping and requesting a few additions or alterations. Financing was arranged for, and plaintiff took possession on January 3rd. Title was transferred by Reiling's execution and delivery of a deed to the premises on January 20, 1948.

Plaintiff contends that Reiling, having sought and accepted the benefits of the Acts and regulations in connection therewith, was bound to convey title for the named ceiling price, citing Priorities Regulation 33.[4]

Defendants contend the Act relied upon by plaintiff was repealed on June 30, 1947, and that no sale was made to plaintiff until after the Agency had gone out of existence. Further, that plaintiff's action was not brought within the time limited by law.

At the outset, it seems clear that defendant Kenna was merely acting as the agent of Reiling. This is expressly stated in the contract of November 28, 1947. Elimination of defendant Kenna leaves the owner Reiling in the case. It may be assumed that by virtue of the earnest money contract equitable title vested in the plaintiff as vendee and the legal title remained in Reiling.[5] With this situation existing, we have a plaintiff vendee perfectly satisfied to pay the purchase price of $11,700.00 on the date of the contract and until he learned, about a week later, that a ceiling price of $8,400.-00 had been established by law. Plaintiff protested to the owner's agent at once and was proffered his earnest money check by Kenna, because the owner would not sell to plaintiff for less than $11,700.00

Plaintiff now urges that he has a right to restitution of the $3,300.00 overpayment by virtue of an existing liability on defendant's part to sell to him at the ceiling price because the repealing statute, 61 Stat. 193, § 1(a), did not expressly provide for a release of such liability. It must be conceded that there is no such provision in the Act of June 30, 1947. With this in mind, plaintiff argues that 61 Stat. 635, 1 U.S.C.A. § 109, constitutes a general saving clause, and the liability continues even after the expiration of the Act creating it.

It appears that 61 Stat. 635 stems from a combination of 16 Stat. 432 and 58 Stat. 118. From the beginning (1871) it was intended to cover every form of punishment to which a defendant subjects himself by violation of the common laws of the country.[6] As re-enacted and approved on July 30, 1947, it reserved to the government the remedy requiring restitution of overcharges made in violation of the 1946 Act.[7] It is not limited to criminal proceedings, for the district courts were vested with express jurisdiction to enforce any liability created under the Act.[8] It would seem, therefore, that the court has jurisdiction for the reason that the sale took place prior to January 1, 1948, and the purchase price exceeded the ceiling provided by law. Under Minnesota law plaintiff presumably held an equitable title to the premises from the time of the execution of the earnest money

---

4. "(g) (1) (ii) As long as this regulation remains in effect, no person (whether the builder or any other owner) shall sell a one-family dwelling built or converted under the Reconversion Housing Program (where a builder has used an HH rating to get materials for the building or converting) for more than the maximum sales price specified in the application as approved plus normal broker's fees or commissions actually incurred for services rendered at the purchaser's request and which a buyer of real estate customarily assumes in the community where the dwelling is located * * *."

5. In re Petition of S. R. A. Inc., 219 Minn. 493, 18 N.W.2d 442.

6. United States v. Reisinger, 128 U.S. 398, 9 S.Ct. 99, 32 L.Ed. 480; Great Northern R. Co. v. United States, 208 U.S. 452, 28 S.Ct. 313, 52 L.Ed. 567; Hertz v. Woodman, 218 U.S. 205, 30 S. Ct. 621, 54 L.Ed. 1001.

7. United States v. Carter et al., 5 Cir., 171 F.2d 530, 531.

8. Heinicke v. Parr et al., 6 Cir., 168 F.2d 194.

contract.[9] Had defendant Reiling obtained the Agency's increase in the maximum sales price, as applied for by him, it would be binding here on plaintiff. The Agency did grant defendant Reiling application for an increase of the maximum price on a one-family dwelling next to the premises we are here concerned with, and it would not seem unreasonable to expect such an increase here, but no action was taken which may be considered as the equivalent of a denial of the application. Under the circumstances, is plaintiff within Section 7(d), supra? While it appears that plaintiff is asking the court to remake his contract, the Acts furnish no basis to do otherwise than hold defendant to the maximum price of record with the Agency. Of course, it would be unreasonable, if not inequitable, to permit plaintiff to enrich himself by including in the maximum price the alterations and additions demanded by him of Reiling, and in excess of that provided in the plans and specifications on file. All such additional expense should be deducted and credit allowed Reiling.

■ Defendants make the point that plaintiff's action is barred by the applicable one-year statute of limitation. The Rules of Civil Procedure provide that, "A civil action is commenced by filing a complaint with the court."[10] The instant action was commenced on November 26, 1948, the date the complaint was filed; hence the statute of limitation is not a bar, the basis for the cause of action having occurred on November 28, 1947.

The action is dismissed as to defendant John J. Kenna.

Plaintiff may submit findings of fact, conclusions of law, order for and form of judgment against defendant William A. Reiling, consistent with the foregoing.

Defendant Reiling is allowed an exception.

---

9. Stearns v. Kennedy, 94 Minn. 439, 103 N.W. 212; In re Petition of S. R. A. Inc., 219 Minn. 493, 18 N.W.2d 442; Nesseth v. Creedon, D.C.Minn., 80 F. Supp. 269.

10. Rule 3, 28 U.S.C.A.; Zuckerman v. McCulley, 8 Cir., 170 F.2d 1015, at page 1018.