**UNITED STATES v. FORTIER et al.**

No. 4521.

United States Court of Appeals First Circuit.

Dec. 12, 1950.

Robert D. Branch, Asst. U. S. Atty., Concord, N. H. (John J. Sheehan, U. S. Atty., Concord, N. H., on brief), for appellant.

Stanley M. Brown, Manchester, N. H. (McLane, Davis, Carleton & Graf, Manchester, N. H., and Meyer Green and Green, Green, Romprey & Sullivan, Manchester, N. H., on brief), for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and FAHY, Circuit Judges.

MAGRUDER, Chief Judge.

On November 9, 1948, the United States filed its complaint in the court below under § 7(c) of the Veterans' Emergency Housing Act of 1946, 60 Stat. 207, 50 U.S.C.A. Appendix, § 1821 et seq., against the defendants, doing business in partnership under the name Modern Building Company. Relief was sought by way of mandatory injunction requiring the defendants to make restitution to two veterans, who had purchased houses constructed by the defendants, of sums which they had paid for said houses in excess of the maximum sales prices set forth in defendants' approved application for priorities assistance under Priorities Regulation 33, 11 F.R. 4085. The district court gave judgment for the defendants, and the United States appealed.

Priorities Regulation 33 was issued by Civilian Production Administration pursuant to the provisions of Title III of the Second War Powers Act, as amended, 56 Stat. 176, 50 U.S.C.A. Appendix, § 633, and executive orders thereunder.[1] Subsequently, by Housing Expediter Priorities Order 5, 12 F.R. 2111, the Housing Expediter took over and adopted Priorities Regulation 33 as his own regulation under the regulatory power conferred upon him by § 4 of the Veterans' Emergency Housing Act of 1946.

The defendants, on August 21, 1946, made application for a residential construction permit under Priorities Regulation 33. Upon approval of the application on September 9, 1946, defendants were authorized to construct two five-room houses in accordance with detailed specifications. A project serial number was assigned, and an HH preference rating was issued to the defendants; also, a maximum sales price of $8,350 was established for each house. At this time the building materials which were to be purchased with the priorities assistance were all under price control. But by Supplementary Order 193, issued by the Price Administrator November 12, 1946, price controls were lifted from all such commodities (11 F.R. 13464). It does not appear that the defendants had made use of their preference rating to obtain any substantial amount of building materials prior to the lifting of price control. Indeed, the record is lacking any clear indication that the defendants had any substantial benefit from their preference rating in the obtaining of building materials. Apparently such preference ratings which had not been used prior to March 31, 1947, ceased to be of value after that date. See testimony by the Housing Expediter, Hearings before the Committee on Banking and Currency, House of Representatives, 80th Cong., 1st Sess., 1947, on H.R. 2547, at p. 55.

One of the houses, which was completed in August, 1947, was sold on December 4, 1947, for the price of $12,000. The other house was not completed until January, 1948, but it had been sold by the defendants, prior to completion, on November 12, 1947, for $12,800. The defendants offered to prove, through the testimony of an appraiser for the Veterans' Administration, that, in performance of his duties in conjunction with G.I. loans, he had appraised the first house as being of the fair value of $11,100 for loan purposes, and the second of the fair value of $12,500 for loan purposes. This offer of proof was rejected by the court.

Section 944.54(g) of Priorities Regulation 33 forbade any person to sell a dwelling house built under said regulation for more than the approved maximum sales price; such restriction, the regulation

[1] So far as Priorities Regulation 33 rested upon the statutory basis of Title III of the Second War Powers Act, that basis was eliminated by the expiration of said Title III on March 31, 1947, by force of Section 3 of the First Decontrol Act of 1947, 61 Stat. 34, 50 U.S.C.A.Appendix, § 633 note.

stated, "must be observed so long as this regulation remains in effect." Section 1 (b) of the Veterans' Emergency Housing Act of 1946 provided that the Act, "and all regulations and orders issued thereunder, shall terminate on December 31, 1947, or upon the date specified in a concurrent resolution by the two Houses of the Congress, declaring that the provisions of the Act are no longer necessary to deal with the existing national emergency, whichever date is the earlier." Section 5 of the Veterans' Emergency Housing Act provided, 60 Stat. 210: "It shall be unlawful for any person to effect, either as principal or broker, a sale of any housing accommodations at a price in excess of the maximum sales price applicable to such sale under the provisions of this Act, or to solicit or attempt, offer, or agree to make any such sale. It shall be unlawful for any person to violate the terms of any regulation or order issued under the provisions of this Act. Notwithstanding any termination of this Act as contemplated in section 1(b) hereinabove, the provisions of this Act, and of all regulations and orders issued thereunder, shall be treated as remaining in force, as to rights or liabilities incurred or offenses committed prior to such termination date, for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense."

Section 7 of the same Act contained various provisions for criminal and civil enforcement.

As it happened, the Veterans' Emergency Housing Act of 1946 was not terminated in either of the two ways contemplated in § 1(b) of that Act, above quoted. Rather, such Act, or the part thereof here involved, was repealed on June 30, 1947, by the Housing and Rent Act of 1947, § 1(a) of which provided, 61 Stat. 193, 50 U.S. C.A.Appendix, § 1881(a): "Sections 1, 2(b) through 9, and sections 11 and 12, of Public Law 388, Seventy-ninth Congress, are hereby repealed, and any funds made available under said sections of said Act not expended or committed prior to the enactment of this Act are hereby returned to the Treasury: *Provided,* That any al-

locations made or committed, or priorities granted for the delivery, of any housing materials or facilities under any regulation or order issued under the authority contained in said Act, and before the date of enactment of this Act, with respect to veterans of World War II, their immediate families, and others, shall remain in full force and effect."

It seems clear that the United States cannot base its present suit upon the last sentence of § 5 of the Veterans' Emergency Housing Act, which was thus repealed outright on June 30, 1947, prior to the sales of the houses now in question. True, the repealing section, § 1(a) of the Housing and Rent Act of 1947, contained a proviso keeping in effect certain priorities theretofore granted for the delivery of housing materials. But the language of the proviso does not aptly express an intention by Congress to keep in effect the maximum selling price restrictions of Priorities Regulation 33, as applied to *future* sales of houses built under residential construction permits approved prior to June 30, 1947. The legislative history of the proviso is somewhat obscure and inconclusive. Apparently what Congress had in mind is indicated in the report of the House Committee on Banking and Currency on S. 2182 which became the Housing and Rent Act of 1948. This report stated, H.R.Rep. No. 1560, 80th Cong., 2d Sess.: "The Housing and Rent Act of 1947 protected any allocation made or committed or priorities granted for building materials to veterans of World War II or their families under Public Law 388, of the Seventy-ninth Congress. This protection was continued in effect in this bill to honor any such commitments which might still exist."

Having repealed the Veterans' Emergency Housing Act of 1946, it is significant that Congress addressed itself specifically to the problem of veterans' housing, in the Housing and Rent Act of 1947, 50 U.S.C.A. Appendix, § 1881 et seq. Thus in § 4(a) (1) of that Act it was provided that no single family dwelling house, "the construction of which is completed after the date of enactment of this title and prior to March 1, 1948, shall be sold or offered for

sale, prior to the expiration of thirty days after construction is completed, for occupancy by persons other than" veterans of World War II or their families, and in § 4(a) (3) it was provided that no such dwelling house "shall be sold or offered for sale to any person at a price less than the price for which it is offered to veterans or their families". If Congress had further intended to keep in force for the future any maximum selling prices which had theretofore been imposed under Priorities Regulation 33, it would have been natural to express such intent in the proviso to § 1(a) which repealed the Veterans' Emergency Housing Act of 1946, the statutory basis for Priorities Regulation 33.

The United States puts much reliance upon the Act of March 22, 1944, 58 Stat. 118, amending R.S. § 13 to read as follows as now found in 1 U.S.C.A. § 109: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

Since § 1(a) of the Housing and Rent Act of 1947 did not expressly provide that the repeal of the Veterans' Emergency Housing Act of 1946 should have the effect of releasing or extinguishing any "penalty, forfeiture, or liability incurred" under such Act and Priorities Regulation 33 thereunder, we take it that, by virtue of the provision of 1 U.S.C.A. § 109 above quoted, the Veterans' Emergency Housing Act of 1946 and Priorities Regulation 33 thereunder must be treated as still remaining in force for the purpose of sustaining

any proper action for the enforcement of any "penalty, forfeiture, or liability" incurred by the defendants thereunder prior to June 30, 1947, when the Act was repealed. But that is of no help to the United States in the case at bar, for here the sales of the two houses did not take place until after June 30, 1947, and therefore the defendants as of that date had not incurred any "liability" to make any restitution of a portion of the purchase price paid by the purchasers of the two houses. The obligation of the defendants to observe a maximum sales price of $8,350 in the sale of the two houses in question was in no proper sense of a contractual nature, but resulted by imposition of law under § 4 of the Veterans' Emergency Housing Act of 1946 and Priorities Regulation 33 thereunder. That contingent obligation necessarily lapsed with the repeal of the Act and the regulation; indeed, as above stated, § 944.54(g) of Priorities Regulation 33 expressly provided that such maximum price restriction "must be observed so long as this regulation remains in effect." In this respect, price regulation on the sale of houses under the Veterans' Emergency Housing Act of 1946 was no different from price regulation under the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq. When the latter Act terminated on June 30, 1947, there was of course no further obligation to observe price ceilings in the future sale of commodities, although under § 1(b) of the Price Control Act, "as to offenses committed, or rights or liabilities incurred, prior to such termination date," the provisions of the Act and the regulations thereunder "shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense." 56 Stat. 24.

United States v. Carter, 5 Cir., 1948, 171 F.2d 530, 532, is distinguishable, for there the government was allowed to maintain an action "to secure restitution of overcharges that had been made while the 1946 Act was in full effect." Other cases, in so far as they tend against the conclusion we have reached, are to us unper-

suasive in their reasoning. See United States v. Tyler Corp., D.C.E.D.Va.1949, 90 F.Supp. 395; Rheinberger v. Reiling, D.C.D.Minn.1950, 89 F.Supp. 598; Pruitt v. Litman, D.C.E.D.Pa.1949, 89 F.Supp. 705; Katz v. Litman, D.C.E.D.Pa.1949, 89 F.Supp. 706.

The judgment of the District Court is affirmed.

WOODBURY, Circuit Judge (concurring). I entirely agree. All I care to add is that I entertain grave doubt with respect to the standing of the United States under § 7(c) of the Act of 1946, or even of the Expediter, or his successor, to bring suits for restitution, particularly within the year given to buyers by § 7(d) of the Act to do so on their own behalf.