## UNITED STATES v. DUVARNEY.

### No. 4522.

United States Court of Appeals
First Circuit.

Dec. 12, 1950.

Robert D. Branch, Asst. U. S. Atty., Concord, N. H. (John J. Sheehan, U. S. Atty., Concord, N. H., on brief), for appellant.

David S. Maclay, Manchester, N. H. (Devine & Millimet, Manchester, N. H., on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and FAHY, Circuit Judges.

MAGRUDER, Chief Judge.

This is a companion case to United States v. Fortier, 1 Cir., 185 F.2d 608, which we have just decided. In the district court judgment went for the defendant, on the strength of that court's ruling in the Fortier case. We see no significant difference in the facts of the two cases, and affirm the judgment herein for the reasons given in our opinion in the Fortier case.

In accordance with the provisions of Priorities Regulation 33, the defendant applied for a residential construction permit and an HH preference rating for the construction of the two houses now in question in Derry, New Hampshire. The application was approved on June 3, 1946, with an established maximum selling price of $6,000 for each house. It appears from the Agreed Statement of Facts that contracts for the sale of the two houses were made on June 25, 1947, which was a few days before the repeal of the Veterans' Emergency Housing Act of 1946, 50 U.S.C.A.Appendix, § 1821 et seq. However, the sales were actually executed after said Act had been repealed. On July 25, 1947, the deed to one house was

delivered to the purchaser, Julius D. Shivers, Jr., for a consideration of $10,500 contemporaneously paid to the seller. On August 20, 1947, the deed to the other house was delivered to the purchaser, Harry K. Wright, for the consideration of $9,600 then paid. The Agreed Statement of Facts contains the following additional recitals:

"(a) At the time the Wright and Shivers dwellings were sold, the defendant did not consciously and intentionally violate the law.

"(b) The fair market value of the two houses in question was at the time of sale equal to or in excess of the actual sales price, and the Shivers house was actually appraised by the Veterans Administration for a G. I. loan at a market value of $10,537.00; and the F. H. A., in the process of guaranteeing a loan, placed a value of $10,100.00 on the Wright house.

"(c) The defendant did not realize any profit on the construction or sale of these two dwellings."

In its present complaint, the United States seeks a mandatory injunction requiring the defendant to make restitution to Wright in the sum of $3,600 and to Shivers in the sum of $4,500, being the amounts, respectively, of the alleged illegal overcharges received by the builder in July and August, 1947, after the Veterans' Emergency Housing Act had been repealed.

On appeal the United States urges that, even if it is not entitled to compel restitution under the facts of the Fortier case, the present case warrants a different result because here the contracts for sale were made before the Act had been repealed. The contention appears to be an afterthought, because the plaintiff's complaint recites only the sales, on the dates subsequent to the repeal of the Act, and makes no allegation as to any prior contracts to sell. Further, the Statement of Points on appeal makes no mention of the dates of the contracts to sell as being of significance. In any event, the contention is without substance.

As we explained in the Fortier case, notwithstanding the repeal on June 30, 1947, of the Veterans' Emergency Housing Act of 1946, the effect of 1 U.S.C.A. § 109 may have been to keep in force §§ 4 and 5 of the repealed Act and Priorities Regulation 33 thereunder for the purpose of sustaining any proper action or prosecution for the enforcement of any "penalty, forfeiture, or liability" incurred prior to the effective date of the repeal. Section 5 of the Veterans' Emergency Housing Act made it unlawful for any person to effect the sale of a house at a price in excess of the maximum sales price applicable under the Act, "or to solicit or attempt, offer, or agree to make any such sale." The defendant might therefore have incurred a criminal liability under the Act prior to its repeal, provided he "willfully" violated § 5 in making the agreements, see § 7(b) of the Act; and repeal of the Act may not have extinguished defendant's liability to prosecution for any such offense. Also, the contracts to sell which defendant made on June 25, 1947, may have been unenforceable for illegality and, prior to repeal of the Veterans' Emergency Housing Act, the Housing Expediter might have brought a complaint under § 7 (a) for an injunction against a threatened violation of the Act in the execution of the contracts.

But we do not have before us a criminal prosecution for a violation that occurred before the Act was repealed, nor a complaint to enjoin a violation of the Act and the regulation while the same were in force. It is a complaint, filed over two years after the repeal of the Veterans' Emergency Housing Act, to enforce an asserted liability of the defendant to make restitution of the amounts, respectively, by which the selling prices for the two houses paid and received in July and August of 1947 exceeded the maximum selling prices established under Priorities Regulation 33.

The difficulty with the plaintiff's case is that, on June 30, 1947, when the Veterans' Emergency Housing Act was repealed, the defendant was not then under any "liability" to make restitution to Shivers or Wright of any sums of money, for Shivers and Wright had not at that time made payment for the houses. Though the making of the contracts to sell may have been illegal on June 25, 1947, there was no illegality in the actual

sales in July and August 1947, and in the receipt by the defendant at those times of the respective agreed prices. The present is therefore not a "proper action" to enforce any "liability" which the defendant had incurred prior to the repeal of the Act and the lapse of Priorities Regulation 33 thereunder.

The judgment of the District Court is affirmed.