A. W. HARTWIG and Jeff Tingle,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 15145.

United States Court of Appeals
Ninth Circuit.

May 23, 1957.

Rehearing Denied July 8, 1957.

Sterling M. Wood, Billings, Mont., for appellant.

Krest Cyr, U. S. Atty., Dale F. Galles, Frank M. Kerr, Michael J. O'Connell, Butte, Mont., Asst. U. S. Attys., Butte, Mont., for appellee.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

The United States instituted an action against appellants, A. W. Hartwig and Jeff Tingle, under § 2(a) (6) of the Second War Powers Act, 56 Stat. 177 (1942), 50 U.S.C.A.Appendix, § 633, and the Veterans' Emergency Housing Act of 1946, 60 Stat. 207 (1946), to compel restitution of charges alleged to have been made above the ceiling price set by the Federal Housing Administration to named purchasers of dwelling units constructed and sold by the appellants, and for the value of alleged construction deficiencies in violation of Priorities Regulation 33, which was issued in accordance with the Veterans' Emergency Housing Act of 1946.

Appellants applied for and received authorization for priorities assistance from the Federal Housing Administration, hereafter F.H.A., on or about July 1, 1946, to construct twenty-seven dwelling units in the Calhoun Lane Subdivision of Yellowstone County, Montana. The maximum sales price of each unit was established at $8,000, upon the basis of certain representations of plans, specifications, and requisite materials. Through the use of the materials priorities, the appellants obtained building materials actually used in the construction of the particular dwellings. The sale of all of the units occurred no later than June 17, 1947.

Priorities Regulation 33, 11 F.R. 601,-4085, (1946) was promulgated by the Civilian Production Administration, whose functions were transferred to the F.H.A., which adopted Priorities Regulation 33. The Regulation provided priorities assistance to carry out the Veterans Emergency Housing Program, calling for the construction of moderate and low cost housing accommodations to meet the needs of returning veterans.

Priorities Regulation 33, § 944.54(e) provided:

"*Construction of the project.* A builder who constructs, converts, alters or repairs housing accommodations under this regulation must do the work in accordance with the description given in the application, except where he has obtained written approval for a change from the agency which approved the original application."

Priorities Regulation 33, § 944.54(g) (ii) provided:

"A builder must not sell a one-family dwelling unit built or converted under this regulation, *including the land and all improvements (including garage if provided)*, for more than the maximum sales price specified in the application, as approved, including within this sales price the amount of any brokerage fees or commissions paid in connection with the sale, whether paid by the builder or by the purchaser." (Italics supplied.)

It is alleged in plaintiff's first cause of action that the sale of 25 of the units have construction deficiencies which fail to meet the plans and specifications contained in appellants' application approved by the F.H.A. The second cause of action alleges that the sale of 9 units was in excess of the maximum sales price of $8,000, and also alleges that a special improvement district for the construction of water mains, sewers, curbs, gutters, and pavement by Yellowstone County was created upon the petition of appellants. The cost of these improvements were subsequently assessed against the adjacent dwellings, and became tax liens against the 25 units sold by the appellants. The Government alleges that the maximum sales price of $8,000, as represented by appellants and as required by Priorities Regulation 33, § 944.54(g) (ii), included all special improvements, such as sewers, water mains, curbs, gutters and street paving. Hence, it is alleged, the purchasers were forced to pay in excess of the authorized ceiling prices for the units, thereby unjustly enriching appellants.

The complaint prayed for (1) a mandatory injunction directing the appellants to complete the construction of the units in accordance with the plans and specifications, or in the alternative, an award to each purchaser in the amount of the value of the non-conformity of the units; (2) a mandatory injunction directing the appellants to restore to the named purchasers the amounts of direct overcharges received by the appellants in the sale of the units at over-ceiling prices; and (3) a mandatory injunction directing appellants to make restitution to the named purchasers by paying the special improvement levy of Yellowstone County, Montana, against each of the 25 dwellings, or be required to reimburse the named purchasers in the amounts of the tax liens.

Appellants admit having caused Yellowstone County to create a special improvement district for the construction of water mains, sewers, curbs, gutters, and pavement, which resulted in the tax lien against the dwellings sold by appellants. They deny, however, that the maximum sales price of $8,000 included all or any of the special improvements provided by the special improvement district. Appellants also deny that any deficiencies as to plans and specifications in the construction of the units exist, and affirmatively allege that the units were constructed in substantial compliance with the plans and specifications, and were accepted after inspection by an agent of the F.H.A. as being in full conformity therewith.

Appellants deny any direct overcharges. Heretofore, the trial court, taking the view that the appellants, in substance, admitted in their answer that the units were sold in excess of the maximum price, entered a summary judgment granting the relief prayed for relative to the special improvement levy in the second cause of action of the complaint. On appeal this court, finding that a substantial question of fact was presented for determination, remanded the cause for further proceedings. See Hartwig v. U. S., 9 Cir., 1954, 209 F.2d 604.

Upon remand, the trial court referred the case to a special master for a hearing and a finding as to whether any of the units were sold at prices in excess of the maximum price agreed upon, and the value of any construction defects existing.

The special master found that representatives of the F.H.A. accepted the units in question as being in substantial

852

compliance with the plans, but that said representatives acted in excess of their authority; that notwithstanding such acceptance, the construction defects and omissions claimed did exist, and that the purchasers should be compensated therefor.

The master also found that the maximum authorized sales price of $8,000 was intended by the parties to include the special improvements for which the special improvement district was formed and upon which improvement taxes were levied, and that the purchasers suffered indirect overcharges, for which they should be compensated by appellants.

The District Court, after reviewing the evidence, adopted the findings of the special master in full. The master having omitted to make findings on the alleged direct overcharges, the District Court supplied this omission and found that nine of the units were sold at a price in excess of $8,000 by virtue of extra charges for electric fixtures which should have been included in the $8,000 price. The District Court further found that the interest upon the tax liens levied and assessed by the special improvement district upon the purchasers of the units should be reimbursed by appellants. It entered judgment against appellants for the value of the construction defects and omissions as listed by the master, the sums set forth as direct overcharges for electric fixtures, and the sums representing the special improvement district levies, all together with interest and costs.

■ At the outset of our consideration of this appeal, we are met with the contention by appellants that the repeal of the Veterans' Emergency Housing Act of 1946 by the Housing and Rent Act of 1947, 61 Stat. 193 (1947), 50 U.S.C.A. Appendix, § 1881 et seq., deprived the Government of its right of action, both at law and in equity.

The Veterans' Emergency Housing Act of 1946, 60 Stat. 207, enacted on May 22, 1946, created a housing expediter to insure an adequate supply of low cost housing accommodations for returning veterans by attempting to overcome shortages in building materials and accelerate home construction with preference to veterans. Priorities Regulation 33 had been issued by the Civilian Production Administration prior to the enactment of the Veterans' Emergency Housing Act of 1946; the Housing Expediter under the 1946 Act continued the regulation in force until December 31, 1947.

On June 30, 1947, Congress repealed all of the 1946 Act, except for certain minor provisions not material here. The repealing statute, the Housing and Rent Act of 1947, 61 Stat. 193 (1947), provided in § 1(a):

"Sections 1, 2(b) through 9, and sections 11 and 12, of Public Law 388, Seventy-ninth Congress, are hereby repealed, and any funds made available under said sections of said Act not expended or committed prior to the enactment of this Act are hereby returned to the Treasury: *Provided,* That any allocations made or committed, or priorities granted for the delivery, of any housing materials or facilities under any regulation or order issued under the authority contained in said Act, and before the date of enactment of this Act, with respect to veterans of World War II, their immediate families, and others, shall remain in full force and effect."

It is urged that Priorities Regulation 33 became ineffective with the repeal of the 1946 Act, and that all rights of action under the 1946 Act ceased upon its repeal, save the allocations and priorities expressly excepted by the repealing *proviso.* Consequently, it is argued, this action brought by the Government on October 8, 1948, after the repeal, did not state a cause of action.

Appellants' position is that the limited savings clause in the repealing statute, together with the change in policy from having maximum price protection for veterans housing as in the 1946 Act to no price restrictions as in the 1947 Act,

necessarily imply that the rights and remedies accruing under the 1946 Act were abated by repeal in 1947, except for the allocations and priorities mentioned in the savings clause.

They conceded, however, in their answers that the dwelling units in question were sold before the repeal of the 1946 Act on June 30, 1947, so that the only question presented is whether the right of actions arising upon the sale of the units abated upon the repeal of the Act.

United States v. Fortier, 1951, 342 U. S. 160, 72 S.Ct. 189, 96 L.Ed. 179, cited by appellants in support of their position, held that houses sold after the repeal of the Veterans' Emergency Housing Act of 1946 were not subject to maximum price stipulations made under Priorities Regulation 33. The question presented on this appeal as to houses sold while the statute was in effect was not passed upon.

The general savings statute found that 1 U.S.C.A. § 109, authorizing the enforcement of causes of action arising prior to the repeal of statutes subsequent to such repeal, preserved the Government's right of action under the 1946 Act and Priorities Regulation 33. The presence of the limited savings clause in the repealing provision or the change in Congressional price protection policy, do not exclude either expressly or by implication the effect of the general savings statute. United States v. Carter, 5 Cir., 1948, 171 F.2d 530; Pruitt v. Litman, D.C.E.D.Pa.1949, 89 F.Supp. 705; United States v. Tyler Corporation, D.C.E.D.Va.1949, 90 F.Supp. 395; Rheinberger v. Reiling, D.C.D.Minn. 1950, 89 F.Supp. 598; United States v. Fortier, 1951, Footnote 3, 342 U.S. 160, 72 S.Ct. 189, 96 L.Ed. 179; contra, Sedivy v. Superior Home Builders, 7 Cir., 1951, 188 F.2d 729 (dictum).

Appellants contend that § 944.54(g) (ii) of Priorities Regulation 33 read *in pari materia* with the rest of the Regulation and viewed with the policy of the 1946 Act, indicates that the term "improvements" has reference to accommodations constructed by the builder with the use of priority materials. Hence, they urge there can be no liability upon appellants for the special assessment improvements in which materials obtained without priority ratings were used.

Appellants represented to the Government that street and utility improvements would be installed by them and included in the sales price, and that purchasers of the units would not be required to pay any special assessments. The Housing Expediter was empowered in § 2 of the Veterans' Emergency Housing Act of 1946 to issue regulations necessary to the exercise of his powers, and Priorities Regulation 33 was within the purview of the statute. § 944.54(e) of Priorities Regulation 33 provided that the builder must do the work in accordance with the description given in his application. Appellants were bound by their representation that street and utility improvements would be included in the sales price, and no special assessments would be levied upon the purchasers. The special master found that the maximum authorized sales price of $8,000 was intended by the parties to include the special improvements for which the special taxes were levied. The District Court adopted this finding, and there being sufficient evidence to support the finding, we are required to follow it.

The units were conveyed by warranty deeds to the purchasers prior to the attachment of the special improvement liens, and the levy fell solely upon the purchasers. Consequently, appellants urge no liability can be enforced against themselves for the assessments. We do not agree. The maximum sales price was to include all of the items included in the special assessment levy, and the purchasers who were required to pay in excess of the maximum sales price because of appellants' failure to perform their contract should be reimbursed for the sums paid to satisfy the liens.

Appellants rely upon a favorable Compliance Inspection Report made by an F.H.A. Building Inspector on October 29, 1947, who certified that "Building

improvements acceptably completed." The purpose of the inspection, as indicated by the F.H.A. form, as well as the date of inspection being after the repeal of the 1946 Act, was to enable the builder to obtain F.H.A. insurance.

Although the Compliance Inspection Report indicated acquiescence in the deviations, the United States was not bound by the unauthorized approval of its agent, who was bound to follow § 944.54 (e) of Priorities Regulation 33, requiring written approval upon application of the builder for changes in plans from those specified in the original application. See United States v. Austin, D.C.D.Md.1951, 100 F.Supp. 33, 42.

Affirmed.